No. 89.—The Mutual Benefit Life Insurance Company, plaintiff in error, *vs.* John C. Ruse.

[1.] An Insurance Office makes insurance of the life of A at the instance of B. In the policy it is stipulated that the premiums shall be paid on the 10th of April, annually; and that if they were not then paid, the company should not be liable for the insurance, or any part thereof, and the policy should cease and determine. Printed proposals, purporting to be the terms and conditions of insuring, were put out by the company to persons dealing with them, one article of which was that a *party neglecting to settle his annual premium within thirty days after it is due, forfeits the interest he has in the policy.* No reference is made in the policy to the printed proposals. The premium due on 10th April, 1847, was not paid at that time; the insured died four days thereafter, and after his death, and within the thirty days, the premium then due was tendered and refused by the company: *Held,* that the article in relation to the thirty days does not extend the contract of insurance beyond the time designated in the policy for the payment of the premium, and that the company, according to the facts of this case, are not liable.

Attachment, in Muscogee Superior Court. Tried before Judge Alexander, May Term, 1850.

On the 15th of July, 1846, the Mutual Benefit Life Insurance Company issued to John C. Ruse a policy of insurance upon the life of Ira D. Bugby, for the sum of $2000, at an annual premium of $97 40, " to be paid on or before the 10th day of April in every year," and reciting, that "in case the said John C. Ruse shall not pay the said annual premium on or before the several days hereinbefore mentioned for the payment thereof," then the policy to be void.

By the " prospectus," &c. contained in a printed pamphlet delivered by the agents of the company to persons insuring, as containing the conditions on which insurance could be effected, it was stated under the head of " Forfeiture of Policy," as follows : " A party neglecting to pay his premium within thirty days after it becomes due," forfeits the interest he has in the policy.

On the 14th of April, 1847, four days after the annual premium became due, Ira D. Bugby died, and a few days thereafter, before the expiration of the thirty days, the annual premium was tendered to the agent of the company, and refused by him.

Ruse sued out an attachment against the company, and on the

trial of this case, the questions were made which are brought up for review.

The facts above stated were in evidence, when plaintiff tendered the printed pamphlet referred to above. Objected to by counsel for defendant, and objection overruled. This is the first error assigned to the decisions of the Court below.

The Court was requested by counsel for plaintiff below to charge the Jury that the pamphlet in evidence proved that the party was allowed thirty days in which to pay the premium. The Court declined so to do, but said that the language was equivocal, and that he would refer it to the Jury for their own construction.

The Jury found a verdict for plaintiff; whereupon defendant's counsel moved for a new trial—

1st. Because the Court erred in admitting the pamphlet in evidence.

2d. In refusing to charge as requested by plaintiff, and in charging as stated.

3d. Because the verdict of the Jury is contrary to law and evidence.

The motion was refused, and error is assigned thereon.

H. Holt, for plaintiff in error, cited the following authorities in support of the errors charged in refusing the new trial, on all the grounds taken in the *rule nisi :*

1 *Phil. on Ins.* 24 *to* 30, *inclusive.* 2 *Phil. on Ins.* 730 *to* 732. 13 *Mass. R.* 96, *Higgenson vs. Dall.* 2 *Cain's R.* 155, *Vanderboort and another vs. Smith, Pres't Col. Ins. Co.* 2 *Johns. Rep.* 346, *Cheriot vs. Barker.* 5 *Pick.* 37, *Parks et al. vs. General Interest Ins. Co.* 1 *H. Black.* 254, *Routledge, ex'r of Routledge, vs. Burrell and another.* 2 *H. Black.* 574, *Wood et al. vs. Woosley.* 6 *T. R.* 710, *same case in error.* 5 *T. R.* 695, *Tarlton et al. vs. Standiforth et al.* 6 *East. Rep.* 571, *Salvin et al. vs. James & Langston.* 12 *East. Rep.* 183, *Want & Gaskoin, ex'rs of Want, vs. Blunt et al.* 7 *M. & W.* 151, *Acey and another, ex'rs of Simpson, vs. Br. Com. Ins. Co.* 6 *Wend.* 488, *Duncan vs. Sun. Fire Ins. Co.*

H. L. Benning, for the defendant in error, relied upon the fol-

lowing authorities : Authorizing the admissibility of the evidence, and the finding of the Jury, viz :

See 1 *Phillips on Insurance*, 30.    The *Ex'rs of Want vs. Blount and others*, 12 *East*. 182.    6 *East*. 571.    5 *Term Rep*. 695. *Greenleaf's Ev*. 405.    12 *Wheaton*, 515.    4 *Cowen*, 645.

To show that the rule under the prospectus, allowing thirty days are similar to days of grace, and as to rule allowing days of grace, referred to *Bailey on Bills,* 235.   9 *Wheaton*, 581.   1 *Peters*, 25.    *Bailey on Bills*, 243.    4 *Mass. R.* 345.    6 *Mass.* 449.    17 *Mass. R.* 449.    9 *Pick.* 420.

As to the construction of policies.    2 *Binney*, 373.    1 *Burrows*, 349.    12 *Wheaton*, 383.    *Marshall on Ins.* 2 vol. 796.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The errors assigned grow out of the refusal of the Court below to award a new trial at the instance of the defendant below.    The specifications of error are, the grounds taken in the rule for a new trial.    But counsel for the plaintiff in error relied, before this Court, only upon two of those grounds, to-wit :

1st. Because the Court erred in permitting said pamphlet, or any portion thereof, to be read in evidence on the trial of said case.

2d. Because the Court erred in this, that when the attorney for the plaintiff requested him to charge the Jury that the pamphlet in evidence proved that the party was allowed thirty days in which to pay the premium, the Court refused, saying that the language was equivocal, and that he would refer it to the Jury for their construction.

The pamphlet referred to, purports to be the rules and regulations of the plaintiff in error—" The Mutual Benefit and Life Insurance Company."    It contains numerous statements or rules, which relate to the business and the manner of conducting it, of that company.    It does not appear to have been published by the authority and direction of the company ; but it was proven that pamphlets of like character with this, were handed out, at different times, by the company, to persons wishing to deal with them, and making enquiry as to the terms, &c. of insurance.    In this pamphlet, among other things, is the following article : " A

party neglecting to settle his annual premium within thirty days after it is due, or paying assessments within sixty days, as specified in the charter, or refusing to give satisfactory security upon the note, forfeits the interest he has in the policy."

The plaintiff below read in evidence the policy, by which the premiums are stipulated to be paid annually on the 10th of April, and in which it is further stated, " in case the said John C. Ruse (who was the party who had insured the life of a Mr. Bugby) shall not pay the said annual premiums on or before the said several days hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine."

It was farther in evidence, that Bugby, the person whose life was insured, died on the 14th day of April—four days after the time when, by the policy, the premium was payable, and that after his death, and within the thirty days, the premium was tendered, which was due on the policy on the 10th of April preceding, and refused by the company. Under these circumstances, the pamphlet referred to, and more particularly that portion of it before recited, was admitted in evidence for the plaintiff below.

The manner in which the second ground of error is stated in the record, is somewhat equivocal. The language of the rule is to the effect that the Court erred in this—that when counsel for the plaintiff requested him to charge the Jury that the pamphlet in evidence proved that the party was allowed thirty days in which to pay the premium, the Court refused, saying *that it was equivocal, and that he would refer it to the Jury for their own construction.* Now, it is hardly to be presumed that the plaintiff intended to bring before this Court, as error, the refusal of the Court to charge a proposition at the request of the other side, which he maintains is unsound. The refusal of the Court thus to charge, was negatively in his favor, and he would not except to a decision in his own favor. Such exceptions and alleged error would reach no point in the first instance, and would be abused in the second. I apprehend that the real ground of error, is the refusal of the Court to put the true legal construction upon this *thirty day clause* in the pamphlet, but left that to the Jury, in saying to them, *it was equivocal and for their construction.* The question made by these assignments is this : *what, in the state of this case,*

*is the legal effect of this clause in the printed pamphlet ?*  This is clearly a question for the Court.  He ought to have instructed the Jury as to the law which should govern the rights of these parties arising under this policy, and the facts proven, and this article of the pamphlet.  He did not do so—but left the construction to the Jury.  The defendant had a right to complain of this, for the pamphlet being in evidence, the Jury was bound to believe that it was legally before them.  If, in law, the obligation of the defendants to pay the insurance is not affected by this clause in the pamphlet, why then, the admission of it in evidence, and the failure to instruct the Jury as to its legal effect, was a virtual ruling against the rights of the defendants.  Upon the hearing of the cause we thought that there was no error in the admission of the pamphlet, it being put out as the terms and conditions of insurance, by the defendants, and, on that account, to be considered by the Jury subject to the control of the Court, in its right and obligation to pronounce upon its effect in law upon the policy.  Upon looking into the authorities, I am satisfied that we were in error, and, for myself, I now correct it.  I am now convinced that its admissibility depends upon its effect on the contract, and if, as we hold, it does not vary the policy, so as in any way to affect the liability of the company thereon, it was not admissible.  This question becomes immaterial, as the judgment we pronounce upon the clause in the pamphlet will control the cause, so far as that clause is concerned with it.  My correction, therefore, of what to me appears to be an error, does not at all interfere with the judgment of the Court, as pronounced at the hearing.  Its discussion, however, is of some importance, for the reasons which exclude the pamphlet as evidence, shed light upon the construction which we give to it.

The position of the plaintiff below, is, that this pamphlet, being promulgated as containing the terms and conditions upon which the company insures, they are bound by it—its declarations entering into, and constituting a part of their contracts of insurance, and that the meaning and legal effect of the thirty day clause or rule, are, that if the premium is paid or tendered at any time within the thirty days, it extends the contract, so as to hold them liable for the insurance, even where, as in this case, the insured dies after the time stipulated in the policy for the payment of the premium, and before the tender or payment.  I do not mean to say,

that in no case, and for no purpose, would this pamphlet be admissible. In this case, it is inadmissible, because it cannot be construed so as to enlarge or extend the terms and obligations of the contract as contained in the policy.

It is to be noted that the policy contains *no reference whatever to the pamphlet*—of course none to that part of it now being considered.

It is farther to be noted that the policy expressly provides that the premiums shall be paid *annually*, on or before *the 10th day of April*, in every year during its continuance.

And it is also to be carefully noted, that the policy explicitly declares, that if the premiums are not paid on or before the 10th day of April, annually, *the company shall not be liable to the payment of the sum insured, or any part thereof, and the policy shall cease and determine.* What then, is the contract as declared in the policy ? It is; that for the premium expressed, the company insures the life of Mr. Bugby, at the amount ($2000) stipulated. The contract is from year to year, and dependent for its continuance upon the payment of the premium on or before the 10th day of April in every year. This is necessarily the duration of the contract, because of the express declaration, that if the premium is not paid on or before that day in every year, the company shall not be liable, and the policy shall cease and determine. This policy, then, was of force up to the 10th day of April, 1847, the premiums anterior to that date being paid. The premium due on that day not being paid, the policy on that day ceased and determined. At and after that day, there was no contract between the parties. Bugby was not insured, and from thenceforward the parties stood relatively to each other, as they did before any contract had been made. Bugby, the insured, dying subsequently to that day, his insurer had no more right to call upon this company for the insurance, than upon any other company or citizen. Such is clearly the truth, as to this contract, found in the policy itself. Indeed, the plaintiff does not pretend to rely upon the policy alone—his reliance is upon the pamphlet connected with the policy. There is no rule of evidence better established, than that parol evidence shall not be admitted to disannul, or substantially vary, or extend a written agreement. *Oh. Kent in N. Y. Ins. Co. vs. Thomas*, 3 *Johns. Cases*, 4. There are exceptions, it is true, as in case of an *ambiguitas latens*. I shall not

consider the exceptions, except so far as they relate to policies of insurance. Now, so far from the rule being relaxed in cases of contracts of insurance, it applies to them, "particularly and emphatically." 3 *Johns. Cases*, 4. *Skinn.* 54.

"Policies, (says Ch. Justice *Parker,*) though not under seal, have nevertheless ever been deemed instruments of a solemn nature, and subject to most of the rules of evidence which govern in case of specialties. The policy itself is considered to be the contract between the parties, and whatever proposals are made, or conversations had, prior to the subscription, they are to be considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it." *Higginson vs. Dall*, 13 *Mass.* 96.

Whatever is contained in the policy, or written upon it at the time of signing, is a part of the contract, and is adopted by the signature, whether the words are in the margin, or put in by consent after signing, or written transversely, or indorsed. 3 *Esp.* 121. 1 *T. R.* 343, 7 *Johns. R.* 527. 1 *Caines*, 60. *Doug.* 12, *note.*

Now, if this policy had referred to this printed pamphlet, it would have become thereby a part of the contract. So are the authorities. 1 *H. B.* 254. 2 *Ibid*, 577. 6 *T. R.* 710. 5 *Ibid*, 695. *S. C.* 1 *B. & P.* 471. 3 *Anstr.* 707. From which affirmative proposition, logically, it follows, that if the printed proposals are *not* referred to, they are no part of the contract.

If, by mistake, the policy is so framed as not to correspond with the previous agreement of the parties, Equity will correct and reform it, as in case of other contracts. 1 *Duer on Ins.* 71, 73.

Again, if the terms used in the policy, or representations made to the insurer, have, by the *known usage of trade*, and the *practice as between the insurers and the insured*, acquired an appropriate or commercial sense, they are to be construed according to that sense. All mercantile contracts, *if dubious* or *made in reference to usage*, may be explained by parol evidence of the usage. "But the rule (says, Ch. *Kent*,) is checked by this limitation—that the usage, to be admissible, must be consistent with the principles of law, and not go *to defeat the essential provisions of the contract.*" 3 *Kent's Com.* 260. 7 *Johns. R.* 385. 12 *Wheat.* 383. 3 *Bing.* 61. 6 *Pick.* 131. 1 *Hall's N. Y. R.* 619.

The Mutual Benefit Life Insurance Company *vs.* Ruse.

The plaintiff in this suit can bring his case within no one of these qualifications of the rule.    There is no latent ambiguity in this policy—no interlineations—marginal or transverse writing— or indorsements—no reference to printed proposals, rules, or regulations—no pretence, that by mistake, it is not drawn according to the previous understanding of the parties.    It is, however, insisted that this contract is to be construed in the light of the usage indicated in the rule in the printed pamphlet, and that it ought, therefore, to have been admitted in evidence.    It does not incdicate a *mercantile* usage.    If admissible at all, it must be upon the idea, that it proves an usage or practice between the insurers and those who deal with them.    Let it be so considered. When, and under what circumstances is such an usage proveable ? I answer—

1st. When terms are used in a policy, or representations are made to the insurer, which have, by usage, an appropriate commercial *sense, they are to be understood in that sense,* and the usage may be proved.    In this case, no question is made about the construction of words in the policy, or about representations made to the insurers.    The whole question grows out of the extensive independent article, as found in the printed proposals.

2d. The usage is proveable only when there is *ambiguity* in the policy.    Here there is none.    It is as clear as the light of day. The parties have expressed their meaning with unmistakeable perspicuity, and having so expressed themselves, they are to be considered as agreeing to be bound accordingly, and as having expressly *excluded* all *aliunde* facts, circumstances and usages.    I find the doctrine upon this head very clearly stated by Mr. J. *Story,* in the case of the *schooner Reeside.*    " The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character.    It may also be admitted to ascertain the true meaning of a particular word or words in a given instrument, when the word or words have various senses, some common, some qualified, and some technical, according to the subject matter to which they are applied.    *But I apprehend it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and a fortiori not*

*in order to contradict them."* 2 *Sumner's R.* 569, 570.   See also to
the same effect, Lord *Denman's* opinion in *Trueman vs. Loder,* 11
*A. & E.* 589.   1 *Hall's N. Y. R.* 619.   6 *Taunt.* 445.   *Cromp.
& Jervis' R.* 244.   7 *Wend.* 270.   8 *Ibid,* 160.   7 *Cowen,* 202.   7
*Johns. R.* 385.   3 *Kent's Com.* 260.   1 *Phil. on Ins.* 252.   3 *Johns.
Cases,* 1, *and notes.*   1 *Paige,* 278.   13 *Mass.* 99.

If this pamphlet is admitted, it is by the invocation of parol
testimony.   Of itself, it proves nothing, as it bears no evidence of
being the act of the parties.   It is produced as containing the
usage, by which it is alleged the company is bound.   It is set up
by parol—its promulgation is proven by parol—and if admitted,
it is brought to bear upon the policy by the aid of parol evidence.
If admitted, it contradicts the express stipulations of the policy.
The policy declares that if the premiums are not paid on or be-
fore the 10th day of April, it *shall cease and determine.*   The
pamphlet, according to the construction put upon it by the plaintiff,
declares that the policy shall *not cease and determine on that day,*
but shall continue for thirty days longer, if, within that time, the
premiums are paid or tendered.   Upon such views, and the au-
thorities refered to, I am clear, that the pamphlet ought not to
have been admitted.

Being admitted and considered as obligatory upon the parties
to the extent of its legal effect, I enquire, what is the legal effect
of this article ?   I answer, negatively, that it is not to vary the
terms of liability agreed upon by the parties, and does not extend
the protection of the policy beyond the 10th day of April, annually.
The principles of evidence which exclude it as testimony, show
the reason of this construction.   I shall only farther show, that to
this effect has gone the judgment of the Courts of Great Britain,
in cases even stronger for the view of the plaintiff than this.   The
great case upon this subject is, *Tarleton et al. vs. Staniforth et
al.* 5 *T. R.* 695—in which the question made, is exactly the ques-
tion made here, under a state of facts very similar to that of this
case.

The case in *Term,* was as follows : A policy was execut-
ed by the defendants, in which it was stated that the plaintiff had
agreed to pay to them £7 10s. on the 10th June, 1789, and the
like sum every six months during the continuance of the policy,
for insurance of goods by loss from fire.   It was further stated,
that from the date of the policy, and as long as the plaintiffs should

pay the sum of £7 10s. at the time and places designated, and the defendants should agree to accept the same, their funds should be liable to pay the damage which the plaintiff might suffer by fire, "according to the exact tenor of their printed proposals, dated Jan. 1st, 1777." In those printed proposals was the following article : "On bespeaking policies, all persons are to deposit 9s. 6d. for the policy, stamp duty and mark, and shall pay the premium to the next quarter day, and from thence for one year more, at least, and shall, as long as the managers agree to accept the same, make all future payments, *annually*, at the said office, *within fifteen days after the day limited by their respective policies, upon forfeiture of the benefit thereof*, and no insurance is to take place until the premium be actually paid by the insured, his, her or their agent or agents." It was averred in the declaration, that the policy stipulating for semi-annual payments of the premium came under the article above quoted, although that speaks of annual payments. It then stated the plaintiff's loss by fire, after the making of the policy, and whilst it remained in full force, to-wit: on 11th December, 1789, and before the expiration of fifteen days after the day limited in the policy, and before any refusal by the company to accept the £7 10s. every six months, according to the effect of the policy. The declaration farther charged, that it was the true intent and meaning of the policy, that the plaintiff should be insured against losses happening within fifteen days after the day of payment designated in the policy, if plaintiff tendered it within that time, unless before the loss the company had refused to renew the policy ; that all the premiums had been paid, except the last, at the day, and that was tendered before the expiration of fifteen days from the day of payment designated in the policy. One of the pleas was, that the premium of £7 10s. was not tendered until after the 10th December, 1789, the day of payment named in the policy, which was demurred to, and thus the point was made as to the effect of the article extending day of payment for fifteen days.

Lord *Kenyon*, Ch. J. said, "it was admitted in the argument, that the insurance when made, *did not extend to half a year and fifteen days, and that completely puts an end to the whole case.* By the agreement under which the plaintiffs were insured, they stipulated that they would pay half yearly—namely, on 10th June and 10th December, the sum of £7 10s. and that they would, so

long as the managers would agree to accept the same, make their payments within fifteen days after the time limited. If, therefore, when the first premium was paid, the insurance did not extend to fifteen days beyond the half year, the continuation or prolongation of the term depends on two circumstances, which must both concur, that the insured should pay the sum of £7 10s. and that the insurers should agree to accept it. Here, after the policy had had its effect, and before the expiration of the fifteen days, during which time the insured might have proposed to continue the policy, and to which proposal the trustees might or might not have acceded, the loss happened. Barely stating these facts is sufficient to show that the plaintiffs are not entitled to recover. They insist, *that though the time of insurance was expired, and that though no new insurance had been made, they are protected by the policy, by reason of the indulgence of fifteen days,* (just what the plaintiff in this case insists upon,) *but that argument cannot be supported.* (And in the next sentence his Lordship gives the true origin and object of this allowance in England.) The allowance of the fifteen days was merely given *for the purpose of saving the expense of a new policy and a new stamp.* In this case, *the loss unfortunately happened in that interval of time when it was in suspense, whether or not the policy would be renewed,* for at that moment the plaintiffs had not offered to pay, and of course the trustees had not accepted the premium for the next half year. *I am, therefore, clearly of the opinion that the defendants are not liable.*"

In this case is adjudged the object of the fifteen day article; it is a convenient way of renewing the policy without taking out a new one, and paying stamp duties. In this case, it is adjudged that the article does not extend the policy beyond the time of paying the premium agreed upon in it. That settles this cause.

Again, Lord *Kenyon's* judgment settles another point conclusive of this case; it is this—that the privilege to the insured, granted by the article, be that what it may, does not exist *beyond the time when the loss occurs.* In that case, the right is reserved to the company, in the article, to refuse to extend the policy upon the premium being offered. That right is not reserved in this case. But mark; Lord *Kenyon* denies to the insured the right to tender it, under the article, after the loss has occurred. The absurdity of requiring, under any arrangement, a company to in-

sure against fire, goods already burned, or the life of a man already dead, will readily strike the commonest mind. In the case decided by Lord *Kenyon,* the article was referred to in the policy, and as he held, and as all the authorities hold, became thereby a part of the contract. He, considering it as *a part of the policy,* denies to it the effect of extending the policy beyond the time agreed upon in it for the payment of the premium ; and although the article is part of the contract, yet he denies to the insured the right, under it, of claiming the insurance, by a tender of the premium within the fifteen days, *and after the loss had happened.* In this case, there is no reference to the printed article relied upon in the policy; it is no part of the policy, therefore. With how much greater force, then, do the principles ruled by Lord *Kenyon,* apply to this case. If the defendants could be made liable at all, upon the facts of this case, it strikes me that it could rest alone upon the idea, that the tender of the premium within the thirty days, is a new contract. This article contains no provision which allows the company to reject the tender, if made within time, and thus prevent a new contract upon the terms of the old policy. And if a tender of the premium had been made in this case, *beyond* the day of payment named in the policy, and *before* the expiration of the thirty days, *the insured being in life,*I should incline to the opinion that they would have been bound by it; but if made within the thirty days, the insured being dead, and the fact of his death known to the parties, there would be, in that event, no contract—no consideration for the insurance— no mutuality. It would be an act of mere fatuity, out of which no liability could spring. And if the fact of the death of the insured is known to the insurer, and its knowledge withheld from the insurers, and they accept the premium, the contract would be void for fraud. If known to neither party, it would equally be a void contract. There can be no valid contract for the insurance of the life of a dead man. See, in accordance with the decision in 5 *T. R. S. C.* 1 *B. & P.* 471. *Anstruther,* 707. 1 *Phil. Ins.* 30 *to* 34. *Douglass,* 12, *note* 4.

The case of *Selwin vs. James,* (6 *East.* 571,) relied upon by the plaintiff, does not sustain him. It refers to and sustains the doctrine settled in *Tarleton et al. vs. Staniforth et al.* The policy in the two cases was alike—in both, a reference to printed articles —in both, the same article as to extension of time—a loss after

the time stipulated for paying the premium—a tender, &c.   In the former case, in addition to all this, there was proven an advertisement of the insuring office, distinctly avowing *that they do now, and always have considered insurances in their office as continuing for fifteen days after the time limited for payment in the policy.*   The questions in the case grew out of this advertisement; and Lord *Ellenborough* held, that in consequence of *the advertisement*, the policies of this office extended to the expiration of the fifteen days, and during the whole of that time the plaintiff was protected.   The case turned upon the advertisement.   There was judgment for the defendant, because the plaintiff had notified the company that he would not give the increased premium demanded by them for another year, and thus determined the contract.   I do not find any authority in conflict with *Tarleton et al. vs. Staniforth et al.*   I consider the case clear upon authority.

Upon the policy and the article, we are clear that the defendants are not liable to the plaintiff, and that the Jury ought to have been so instructed.

Let the judgment be reversed, and a new trial be awarded.