LAWSON *et al. v.* CITIZENS BANK OF HAHIRA.

No. 12021. FEBRUARY 19, 1938.

*Wilcox, Connell & Wilcox*, for plaintiffs.
*Converse & Coleman* and *Copeland & Dukes*, for defendant.

GRICE, Justice. The plaintiffs operate at Hahira, Georgia, a private, unincorporated bank. In the same town is the defendant, a banking corporation chartered, organized, and existing under the laws of this State. The object of this suit is to compel the chartered bank to pay exchange at the rate of one eighth of one per cent. on the aggregate amount of checks drawn on the plaintiff bank and forwarded to the defendant by correspondent banks for presentation and collection. The petition proceeds on the theory that the plaintiffs have the right to enjoin the defendant from returning to its correspondent banks checks drawn on the private bank and forwarded by correspondent banks to the chartered bank for presentation and collection, and which were in fact not refused payment, except that the private bank insisted that they had the right to charge on their checks exchange in the same

manner as does the defendant on all checks drawn on it and forwarded to petitioners' bank by their correspondent banks for presentation and collection.

■ A contract arises by implication of law, from a general deposit of funds in a bank, that the bank will, whenever properly demanded, pay the funds in such sums and to such persons as the depositor shall direct and designate. *Darien Bank.* v. *Clifton,* 156 *Ga.* 65 (118 S. E. 641); 7 Am. Jur. § 503, and cit. This means that, in the absence of a statute modifying the rule or a contract changing it in a particular instance, the payment must be at par. To deduct exchange would make the payment less than par.

The latter part of section 13-2027 of the Code provides that "a bank" shall have the right to pay checks drawn upon it when presented by any bank, banker, trust company, or any agent thereof, either in money or in exchange drawn on its approved reserve agents, and to charge for such exchange not exceeding one eighth of one per cent. of the aggregate amount of the checks so presented and paid. This first appeared as section 1, subsection 14, of the act approved August 14, 1920, amending an act approved August 16, 1919, entitled "An act to regulate banking in the State of Georgia," etc. Section 1 of article 1 of the act of August 16, 1919, in terms declares that the term "bank" as used in the act means "any monied corporation," etc., "but shall not include private bankers," etc. We agree with counsel for the defendant that it is significant that the General Assembly, in passing this comprehensive statute dealing with banks, in terms excluded private banks from its definition of a bank, and that no provision was made there or elsewhere in our banking laws for the right of a private bank as a matter of law to pay checks drawn on it at less than par.

■ Counsel for the plaintiffs insist, that, independently of any statute giving them the right to charge exchange on their own checks, they are in equity and good conscience entitled to the relief prayed for, i. e., an injunction enjoining the defendant "from refusing to pay exchange at the rate of one eighth of one per cent. on the aggregate amount of checks drawn on petitioners' bank and forwarded to the defendant by correspondent banks for presentation and collection, and from withholding all such checks from petitioners and returning the same unpaid." Counsel rely on

American Bank & Trust Co. *v.* Federal Reserve Bank of Atlanta, 256 U. S. 350 (41 Sup. Ct. 499), and several other decisions following it. In that case the Supreme Court of the United States held that a bill brought by divers State banks against the Federal Reserve Bank and its officers, praying for an injunction, would not be dismissed for want of equity, in view of its allegations. It was alleged that an important part of the income of the plaintiffs is a charge for the services rendered by them in paying checks drawn upon them at a distance and forwarded, generally by other banks, through the mail; that the charge covers the expense incurred by the paying bank and a small profit; that banks in the Federal Reserve system are forbidden to make such charges to other banks in the system; that the plaintiffs were not members of the Federal Reserve system; that, in pursuance of a policy accepted by the Federal Reserve Board, the defendant bank had determined to use its power to compel the plaintiff and others in like situation to become members of the defendant, or at least to open a non-member clearing account with the defendant, and thereby, under the defendant's requirements, to make it necessary for the plaintiffs to maintain a much larger reserve than in their present condition they need; that this diminution of their lending power, coupled with the loss of the profit caused by the above-mentioned clearing of bank checks at par, will drive some of the plaintiffs out of business and will diminish the income of all; that to "accomplish the defendant's wish they intend to accumulate checks upon the country banks until they reach a large amount, and then to cause them to be presented for payment over the counter," or by other devices detailed, "to require payment in cash in such wise as to compel the plaintiffs to maintain so much cash in their vaults as to drive them out of business or force them, if able, to submit to the defendant's scheme." The plaintiffs were chartered banks, and accordingly had the right to charge the exchange under the provisions of our act above referred to. The question in the case before the Supreme Court of the United States was not as to the powers of the Federal Reserve Bank, "but," as stated by Mr. Justice Holmes, "whether the use that, according to the bill, they intend to make of them will infringe the plaintiffs' rights." The ground on which the bill was sustained was made clear in the opinion. Said the court: "Banks as we know them could not exist if they could not rely upon

averages and lend a large part of the money that they receive from their depositors on the assumption that not more than a certain fraction of it will be demanded on any one day. If without a word of falsehood, but acting from what we have called disinterested malevolence, a man by persuasion should organize and carry into effect a run upon a bank and ruin it, we cannot doubt that an action would lie. A similar result, even if less complete in its effect, is to be expected from the course that the defendants are alleged to intend, and to determine whether they are authorized to follow that course it is not enough to refer to the general right of a holder of checks to present them, but it is necessary to consider whether the collection of checks and presenting them in a body for the 'purpose of breaking down the plaintiffs' business as now conducted is justified by the ulterior purpose in view."

There are in the present case no such allegations in the petition as make applicable the doctrine announced in the case just cited. If, therefore, the right of plaintiffs to the relief prayed for can be sustained at all, it must be on some other ground. It is not claimed that there was any contract between the two banks covering the subject-matter in controversy. It is asserted in the petition, however, that there are many private bankers in this State, and that for many years there has been a general custom which recognized the right of private banks to exact and collect exchange on items cleared by them at the same rate that chartered banks exact and charge on items cleared by or through them. It is further alleged that such has been the universal custom for many years, and that "such custom is of such long standing that in the banking business it has become effective and binding not only upon chartered banks but upon private banks." It does not appear from the petition that the defendant bank has ever recognized the right of the private bank to charge exchange, or that the defendant has ever paid to the private bank exchange on the checks drawn on the latter. Does that part of the petition setting forth a custom of private banks to exact exchange, in view of the whole petition, entitle the plaintiffs to the relief sought? We do not think so. The office of a custom or usage is to interpret the otherwise indeterminate intention of the parties. *Mutual Benefit Life Insurance Co. v. Ruse*, 8 *Ga.* 534, 541; *Citizens & Southern Bank* v. *Union Warehouse Co.*, 157 *Ga.* 434, 443 (122 S. E. 327). We have before us

no contract to be construed, and therfore no question as to whether the parties intended to be governed by any custom or usage. To invoke the law of custom to the issue before us would be to misapply it. "Custom may sometime be invoked as entering into a contract or supplying incidents, but not to change the law." *Fidelity & Deposit Co.* v. *Butler,* 130 *Ga.* 225, 243 (60 S. E. 851, 16 L. R. A. (N. S.) 994); *Ponder* v. *Mutual Benefit Life Ins. Co.,* 165 *Ga.* 366 (5) (140 S. E. 761), and cit. Having reached the conclusion above indicated, it is unnecessary to pass upon that ground of the demurrer which insists that no relief is sought except an injunction which is mandatory in character, and that for that reason alone the judge was correct in dismissing the petition.

*Judgment affirmed. All the Justices concur.*