## Childers v. Commonwealth.

(Decided Jan. 13, 1933.)

O. B. BERTRAM and G. J. RICE for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming.

On October 16, 1931, Ben Spurling and Malcolm Cox, while squirrel hunting in Taylor county, came upon the body of a dead man in the woods. It was in such a decomposed condition that it could not be identified from its features. Beside the body were some shotgun shells and two jugs of one-gallon capacity each. The coroner being summoned and the body examined, it was discovered that there were two shotgun wounds on the body, each of which was, according to the medical testimony in this case, fatal. The body was at first identified by Mr. Gribbins as that of his son, but the testimony in this case discloses that Mr. Gribbins thereafter abandoned the claim that the body was that of his son and that Mr. Gribbins' son has since the discovery of the body been seen alive several times. The medical testimony is further to the effect that the deceased had probably been shot some 4 or 5 days previous to the finding of the body in the woods.

On October 10, 1931, Ray Corbin left the place where he was living for the purpose of visiting the appellant to get some intoxicating liquors. Ray Corbin had some time previous to this hurt his ankle while shucking corn, and a relative of his on this October 10th treated the sore place on his ankle with mercurochrome and wrapped it with a rag. When last seen, Corbin was wearing a cap, a necktie, and trousers like unto those later found on the body of the man found in the woods, and which the witnesses positively identified as being the clothing belonging to Ray Corbin. He also had on a tie clasp upon which was the picture of a woman's leg, and such a tie clasp was found on the body discovered in the woods. Corbin also had an open-face watch of cheap design, on the case of which he had scratched the initials "RC," and such a watch was found on this body discovered in the woods. Corbin had a Ford automobile which had been in a collision and had been damaged to the extent of having one of its lights torn off and the other light tilted at an angle which threw the beam of light emanating from it in an upward direction. He left home in this automobile, stopped by the home of a friend who loaded two empty one-gallon jugs into the car, and then went on in the direction of appellant's home. After dark that night there was seen in the neighborhood of Childers' home and near where the body was later found in the woods

a "one light" car with the light tilted so as to throw its rays up in the air. Some shotgun shots were heard that night about the locality where the body was found. Ray Corbin has never been seen since October 10, 1931. On Sunday afternoon, October 11, 1931, a friend of Corbin went over to the home of appellant in search of Corbin, and there discovered Corbin's automobile in the possession of appellant. The latter told this witness that Corbin had been to his house the night before and had eaten supper and had sold the Ford to appellant for the purpose of raising money to go to Illinois. Appellant displayed no bill of sale, however, for the car. Appellant's little stepson had a knife in his possession after the body was found in the woods which the stepson testified had been given to him by the appellant and which was identified as being the knife of Ray Corbin. When the body was found in the woods, it gave evidence of the pockets in the trousers having been rifled. No money of substantial amount was found on the body, although the witnesses say that, when Ray Corbin started out the Saturday afternoon he disappeared for Childers' home, he had a considerable sum of money upon him. He likewise had a .38 special revolver which was not found on the body. A day or so after October 10th, appellant undertook to dispose of such a revolver and also to buy a piece of land with a small down payment, although prior to October 10th it would seem that appellant was in no financial position to make such a purchase.

Appellant was indicted for the murder of Ray Corbin. On his trial all of the facts detailed above were established by the witnesses introduced by the commonwealth. The appellant introduced no testimony, but chose to test his rights to an acquittal under such testimony either by the court on his motion for a peremptory instruction or by the jury on his plea of not guilty. The court overruled appellant's motion for the peremptory instruction, and the jury found him guilty of the crime of voluntary manslaughter, and sentenced him to serve 21 years in the penitentiary. From this judgment he appeals.

Appellant relies on but two grounds for reversal: First, that he was entitled to the peremptory instruction he requested; and, secondly, that the county attorney in his closing argument was guilty of misconduct.

As to the first ground, we are of opinion that the evidence was sufficient to take the case to the jury and sustain its verdict. There can be no doubt but that the body found in the woods was that of Ray Corbin and that he was murdered. The only question then left is, At whose hands did he meet his death? And on this issue the evidence, too, was sufficient to take the case to the jury. It disclosed that appellant by an admission revealed that Corbin was in his company on Saturday night. After the disappearance of Corbin, appellant was found in possession of most of the material wealth that Corbin had with him at the time he met his death—his automobile and his pistol, and there is some evidence to show that appellant also had Corbin's money. At least, in the absence of some explanation of these things, there was evidence to fasten the responsibility for Corbin's murder on appellant. Cf. McDonald v. Commonwealth, 177 Ky. 224, 197 S. W. 665.

In his closing argument, the special prosecutor appointed by the court to assist the county attorney in the trial of this case who was trying this case in the absence of the commonwealth's attorney who was ill, stated that the appellant had not taken the stand and explained to the jury how the car of the deceased came to be in his possession. This remark of the prosecutor was squarely against the inhibition found in section 1645 of the Kentucky Statutes forbidding comment on the defendant's failure to testify in a criminal cause, and he cannot be too severely reprimanded for violating this statute. A law enforcement officer ought to be the first one to obey the law and to set a good example to others less informed. But however reprehensible may have been the conduct of the special prosecutor, we are yet confronted with the proposition whether or not such conduct was of so prejudicial a nature in view of the admonition given by the court as to warrant a reversal of the judgment in this case. As soon as the special prosecutor made this statement of which complaint is now made, the court immediately admonished the jury as follows:

"I want to admonish you that any reference made by the attorneys for the commonwealth concerning the fact that the defendant did not explain or had not explained any fact connected with the trial of

this case or any evidence introduced must not be considered by you in reaching your verdict. The defendant under the law is permitted to testify but the fact that he did not testify must not in any way be allowed to create any presumption against him.''

As a practical proposition, of course, the jury in this case knew that, aside from what the witness for the commonwealth had testified as to how Corbin's car came into the possession of appellant, there was no evidence in the case before them explaining such possession. It is true the unwarranted remark of the special prosecutor perhaps accentuated what the jury already knew; but the court's admonition about the appellant's failure to explain this possession on his part of the car of the deceased was, after all, beneficial to the appellant, since it impressed on the jury a fact they might not otherwise have known; that is, that they ought not to take into consideration against him appellant's failure to explain his possession of the car. We had a very similar case before us in the case of McDonald v. Commonwealth, 177 Ky. 224, 197 S. W. 665. In that case the defendant was convicted of the crime of murder on circumstantial evidence. In the closing argument, counsel for the commonwealth made a statement reflecting on the defendant's failure to testify, and the court at once admonished the jury that they should not consider such argument or such failure to testify. We held that under the facts of that case the error caused by counsel's argument did not warrant a reversal as the error in the light of the court's admonition was nonprejudicial. We thus see that not every case will be reversed where the commonwealth's attorney in his argument comments on the defendant's failure to testify, and especially not where at least after an admonition is given such comment is regarded as nonprejudicial under the facts of the case. As stated, we regard the court's admonition in this case as helpful to the appellant rather than hurtful, and, under the peculiar facts of this case, we are brought to the conclusion that the remarks of the attorney, while erroneous, are not, in view of the court's admonition, prejudicial.

The judgment of the lower court is affirmed.