## Billiter, Miller & McClure v. Hickman et al.

(Decided Feb. 3, 1933.)

DYSARD, TINSLEY & PRICHARD for appellant.

BROWNING, REED & ZEIGLER, E. L. ZEIGLER, W. H. BRADLEY and O. R. BRIGHT for appellees.

212

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The question presented by this appeal for our determination is whether or not the accident which caused the death of Wm. E. Hickman arose out of and in the course of his employment, within the meaning of the Compensation Act, while he was then traveling the highway on his way to work.

This is an action brought for the benefit of Mamie Hickman, widow of William E. Hickman, and his two dependent children.

William E. Hickman was killed on the morning of December 18, 1930, in an accident occurring in Fleming county, Ky., while on his way to work for the appellant, Billiter, Miller & McClure, a partnership. This company, his employer, was then engaged in the finishing process of shouldering, etc., a state highway construction project, known as the Maysville, Mt. Sterling turnpike road, and was so engaged throughout its course extending from the city limits of Flemingsburg to the Mason county line, a distance of four and eight-tenths miles.

The constructed road had at this time been opened for traffic and considerable traffic was moving thereover.

The decedent Hickman had worked for the appellant in several capacities upon this road construction, but had been engaged in the particular work of scraping off the berm of the road the day before he was killed, and at the time of the accident he was going back to continue this same work at the point where he had left off, which was some 1 ½ miles from where he met his accidental death.

The testimony shows that Hickman and other employees were assigned to different places and work along this project as the need arose.

Hickman received wages at the rate of $12 a week, his employment or pay being computed from his daily commencement upon the actual road work to which assigned. The contract of employment did not either expressly or impliedly provide for the transportation of the employees to their places of work upon the road. However, it is admitted that it was customary for these road hands to ride out from Flemingsburg to their

several places of work along the road in their own cars, cars of friends, the company's trucks, or hired trucks.

This method of going to and from their road work was neither authorized nor prohibited by the appellant, who, it appears, had witnessed the existence of this practice among the employees without objection thereto. Rather it is admitted the employees were left to find and choose their own way of reaching their places of work, whether by walking or by catching rides upon trucks or cars of friends.

On the morning of December 18, upon which the accident occurred, Willian E. Hickman was, about 6 o'clock, walking from his home in Flemingsburg along this newly constructed highway to resume his work of sweeping off its berms at the point where he left off this work the day before, and had reached a point about 1½ miles therefrom when he was passed on the road by C. D. Jewett. Jewett was then foreman in this shouldering and berm dressing work, who states that upon seeing Hickman he slowed up and stopped for Hickman, who jumped on the running board of his car; that he had driven his car about a quarter of a mile when Hickman hollered that his hat had fallen off; that he then applied his brakes and stopped his car, and when he and Kelly Lyman, also an employee of the appellant company, who was then riding with him, looked back, they saw Hickman lying in the road, where he had fallen upon his head, inflicting injuries from which he later died that day.

The facts and circumstances as to the occurrence of this accidental injury and death of Hickman on December 18, are thus stated by Mr. Jewett:

"Q. How come you to stop and let Mr. Hickman get on your machine that day? A. As soon as the men get there they start; it was getting late in the season then; I wanted him to get there so he could start work; I did it to accommodate him.

"Q. What was your beginning time? A. Six to six thirty; when all the men were there.

"Q. Mr. Jewett, on this particular morning that Mr. Hickman was killed, it was very close to the time of beginning work; you were in a hurry? A. No, I was not driving over 20 miles.

"Q. Excuse me; I did not ask you that; you were in a hurry to get work? A. Yes sir.

"Q. Mr. Hickman had his equipment ready for work? A. Yes sir.

"Q. He was one of the men under your charge? A. Yes sir.

"Q. You knew he was an employee of the company and under your charge? A. Yes.

"Q. You stopped to pick him up? A. Yes sir.

"Q. Nothing was said, as I understand; he just hopped on? A. Yes sir."

The happening of the accident is also described by Kelly Lyman, who was riding with Mr. Jewett at the time, as follows:

"Q. Tell what you saw and how that happened and what was done. A. It happened around six o'clock. We were going to work. We picked this man up and I guess he had ridden about a quarter of a mile; his hat flew off and he hollored for the man to stop; he started to slow down and before he got stopped this man fell off. He stopped the car as soon as he could. It didn't look like it was over ten feet from where we picked him up. We were driving slow."

From these facts and circumstances surrounding the happening of Hickman's accidental death while on the way to his work, it is shown that Hickman was at the time some 1½ miles from the place where he was to commence his day's work, and also that it was some half hour before his employment was to commence

From these facts and circumstances surrounding the occurrence of this accident, which resulted in Hickman's death, the question , and only question, here presented is: Was the accident one arising out of and in the course of Hickman's employment?

Upon application being made by Hickman's widow for compensation under the provisions of the Work-men's Compensation Act, the board entered an order denying her claim and dismissing her application upon the ground that "plaintiff did not sustain the personal injury and death by accident arising out of and in the course of his employment." Thereupon, the plaintiff

filed her petition for review in the circuit court, wherein it was adjudged that "the decedent, W. E. Hickman, met his death accidently while in the employment of the defendants, Billiter, Miller and McClure, and that said accident and resulting death, as a legal conclusion, based on the record herein, arose out of and in the course of said employment," and directed and ordered that the cause be remanded to the Compensation Board with directions to make her an award.

Defendant's motion and grounds for a new trial being overruled, complaining of this judgment, it prosecutes this appeal.

Appellant here contends: (1) That the accident did not grow out of or in the course of Hickman's employment; (2) that the finding of fact by the Workmen's Compensation Board is conclusive, if supported by any evidence.

First considering the last-urged objection, it is sufficient answer to say that we here find no issue of fact as to the occurence of this accident. There being no issue of fact, there remains only a question of law reviewable upon appeal from the board's finding. "Where there is no issue of fact or where the facts are undisputed, the question on the facts then becomes one of law, and the finding of the board is a finding of law subject to review by the courts with respect to its effect as applied to the rights of the parties." Consolidation Coal Co. v. Ratliff, 217 Ky. 104, 288 S. W. 1057, 1058.

We will now consider the first and main contention made by appellant, that the accident was not one arising out of or in the course of employment as provided by the Statutes, and therefore the lower court was in error in directing the Compensation Board to award an allowance therefor.

Very able and exhaustive briefs have been filed by both sides and several hundred cases cited as authorities sustaining their respective contentions.

It is admitted here that both the employer and employees had accepted the provisions of the Workmen's Compensation Act (Kentucky Statutes, sec. 4880 to 4987) and that under Hickman's contract of employment, it began daily upon his assignment to and his commencing upon actual work, which usually began about 6:30 a. m.

216

Under this situation of fact and circumstances, wherein the employee Hickman met his accidental death, the appellee contends that his injury was a compensable one under the Compensation Act, as the accident in which he was killed was one arising out of and in the course of his employment. Appellee bases this contention upon the grounds: First, that the status of master and servant existed at the time of the accident; second, that the entire roadway was the scene of work, bringing the case within the well-known rule of liability for an injury, occurring while on the master's premises; third, that the deceased employee was at the time of the accident under the control of his employer by reason of his foreman hurrying him forward to expedite work; and, fourth, by reason of the "custom" known and acquiesced in by his employer of its employees usually securing daily gratuitous transportation to their places of road work, it annexed to Hickman's employment the hazard of transportation, which produced his death.

After very mature consideration of these claims advanced by appellee in support of her contention that the lower court properly adjudged that Hickman's injury was a compensable one arising out of and in the course of his employment, we are unable to concur with these views so advanced.

First, we are unable to agree with appellee that the mere fact of the foreman, Jewett, stopping his car and giving a lift or ride to Hickman to his place of work, where they were each then going, served to so accelerate Hickman's employment as to make it at once commence with his getting upon the car, nor do we agree with the claim that by reason of Jewett's extending this friendly kindness of a ride to Hickman, and Hickman's acceptance of it, that such action did create the status of master and servant between them or bring Hickman thereby under the domination and control of Jewett, his foreman, as standing in the shoes of the appellant. We are further unable to agree with, or to recognize as tenable or sound, the argument of appellee that by the very force and effect of Jewett's act of friendly accomodation in giving Hickman this ride to his work, even though extended him at a place where Hickman was then some 1½ miles from the working "premises" of his employer and at a time some

one-half hour before his work or employment was to there begin, was sufficient in itself to constitute Hickman's accident in falling from the car while thus riding thereon, though happening at such time and under such circumstances, an accident then arising out of and in the course of his employment making his resulting injury a compensable one.

While we are in accord and sympathy with the rule that the words "arising out of and in the course of his employment," as used in the Workmen's Compensation Act, should be given a broad and liberal construction, and that such is the holding of many courts including our own, it yet should not go so far afield in imposing liability upon the employer as to become a general insurance against accidental injury, regardless of its casual connection with the course of employment or origin herein.

To this effect, in the case of Lumberman's Reciprocal Ass'n. v. Behnken, 112 Tex. 103, 110, 246 S. W. 72, 73, 28 A. L. R. 1402, the Supreme Court of Texas said:

> "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 916, 918 (17 N. C. C. A. 628)."

In Coronado Beach Co. v. Pillsbury, 172 Cal. 628, 158 P. 212, 213, L. R. A. 1916F, 1164, the court spoke as follows:

> "The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment."

In Fournier's Case, 120 Me. 236, 113 A. 270, 272, 23 A. L. R. 1156, the court, in discussing the real test

for determining when an accident arises out of and in the course of the employment under the Compensation Act, said:

"If an accident does not occur 'in the course of' it cannot 'arise out of', the employment. In this particular class of claims the determining factor is, we think, whether the accident occurred in the course of the employment. * * * The words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto."

In the recent case of Palmer v. Main, 209 Ky. 226, 272 S. W. 736, 738, where compensation was allowed an apartment house janitor, struck by an automobile while in the street, where he had been sent on an errand by the acting manager, we said:

"We have therefore reached the conclusion that an accident arises out of the employment within the meaning of the Workmen's Compensation Act if it was the direct and natural result of a risk reasonably incident to the employment in which the injured person was engaged, and many courts take the same view of this question."

Further, in the even later case of Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543, 544, the court said:

"The rule deducible from them is, that where an employee at the time and place of his injury is engaged in his own business, purpose, or pleasure, or is injured on his way back therefrom to where he should be to do his duty, such injury is not compensable under the Workmen's Compensation Act. * * * In Phil Hollenback Co. v. Hollenback, 181 Ky. 262, 204 S. W. 152, 158, 13 A. L. R. 524, and January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117, the term 'arising out of' and the words 'in the course of his employment' were considered by this court, and the distinction between them was compared and clearly made. The language

of the statutes 'arising out of and in the course of his employment' imposes a double condition on the applicant for adjusted compensation; i. e., the burden of proving the injury arose 'in the course of' and also 'out of' his employment. Evidence of one without proof of the other will not bring the case within the statutes. A claimant asserting such claim must show 'an occupational injury' (Larke v. John Hancock Mut. Life Ins. Co., 90 Conn. 303, 97 A. 320, L. R. A. 1916E, 584, January-Wood Co. v. Schumaker, supra), and that there was some causative connection with the injury, and something peculiar to the employment (Griffith v. Cole Bros. 183 Iowa, 415, 165 N. W. 577, L. R. A. 1918F, 923; Walker v. Hyde, 43 Idaho, 625, 253 P. 1104; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306.)''

In the instant case it was optional with Hickman by what method he would go to the place where his work and employment would commence, as to whether he would ride or walk thereto. His employer did not include the privilege of transportation from his home to his work within the terms of his employment, either expressly or impliedly. The undisputed facts clearly show that the employer never intended to include transportation to his work as an incident of his employment or the hazard involved in such mode of transportation or use of the highway as one of the risks of his employment or incidental thereto.

Neither are we of the opinion that the contention made by appellee that the practice here showed by the evidence of the employees frequently riding to their work, both upon trucks and other cars or vehicles upon which they might secure free transportation, constituted any such adoption by the employer, through its permitting this practice of it as a ''custom'' so as to annex the danger thereof to the employment. The rule as to when a practice is such in its nature and extent as to become a custom, constituting a part of the employer's contract, is clearly set out in the case of A. H. Aulich et al. v. Hugh V. Craigmyle et al., — Ky. — , 56 S. W. (2d) — , decided January 31, 1933, wherein the language of the opinion is as follows:

''A practice to arise to the dignity of a custom so as to enter into and form a part of a contract must

possess those elements of certainty, generality, fixedness and uniformity, as are recognzed by the law as essential to constitute a custom. A loose, variable or discretionary practice does not arise to the dignity of a custom so as to control the rights of the parties to a contract. If the usage leaves some material element to the right of exercising an option, or discretion, of one of the parties, it does not constitute a custom."

Guided by the principles announced in these cited cases, and having reached the conclusion that under the special facts of this case the deceased Hickman, at the time of receiving his accidental injury, while riding on Jewett's car, was not then acting in the course of his employment nor at that time and place was he engaged upon an act connected with or in furtherance of his employer's business, it follows that the accident causing and resulting in his death was not one arising out of or in the course of his employment. We are therefore of the opinion that the Compensation Board did not err in so finding, and that the lower court did err in reversing its order dismissing the application of plaintiff and adjudging it a compensable injury under the act as one caused by an accident arising out of and in the course of his employment.

Therefore the judgment is reversed, and case remanded for further proceedings consistent with this opinion.

Whole court sitting.