## Black Star Coal Co. v. Hall et al.

(Decided Jan. 25, 1935.)

J. B. SNYDER for appellant.

GOLDEN, GILBERT & GOLDEN, J. S. GOLDEN and J. L. DAVIS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

This appeal is prosecuted from a judgment of the Harlan circuit court affirming an award of $12 per week for sixty weeks made to Harry Hall by the Workmen's Compensation Board for the loss of a thumb.

## Hall's Earnings.

Hall entered the employment of the Black Star Coal Company on Monday, July 18, 1932, the next day he loaded two tons of coal and earned 75 cents, on Friday July 21st he loaded six tons and earned $2.25, thus making $3 earned that week. On Monday, the 25th, Hall loaded three tons and earned $1.13, and on the 27th he loaded two tons and earned 75 cents, thus making $1.88 earned that week. In the morning of August 4th, the first day he worked during the following week, Hall cut off his left thumb, which brought about this controversy. Hall testified he was averaging about $3.25 per day, but just how he arrived at those figures does not appear from the evidence. He testified he worked for Joe Pezziosa and for Alex Frost but the connection of that work with his work for the Black Star Coal Company does not appear. His compensation must be based upon the wages he was earning from work done directly or indirectly for the Black Star Coal Company. Thus, if one of the employees of the Black Star Coal Company were earning $10 per week working for it and $15 per week writing for a trade journal, such employee, if injured in the mine, could not claim compensation upon the basis of a $25 weekly earning. However that may be, in view of other questions in this case, we shall say nothing more at this time on the subject of Hall's wages.

## Misconduct.

The coal company answering Hall's claim before the Workmen's Compensation Board bluntly charged Hall had deliberately and intentionally cut off his own thumb for the purpose of thereby obtaining compensation from the coal company.

There is no good reason for stating and discussing this evidence. It is the province of the board to determine its weight and sufficiency, but we will quote this from the board's opinion:

"Although the evidence submitted by the defendant may create a very strong presumption that the

plaintiff did wilfully inflict this injury upon himself, is it so clear and unequivocal and of such a character as to remove the element of a reasonable doubt? The inference to be drawn from the defendant's evidence might render more logical the guess that the injury complained of was wilfully self inflicted. * * * As was heretofore said by this board in the case of Will Riggin v. Black Mountain Corporation, decided about July 19, 1932, 'where plaintiff has sustained an injury and the defense contends that such injury is wilfully self-inflicted, the evidence to establish this fact must be clear and unequivocal, of the highest character and must approach the point of proof beyond a reasonable doubt.' "

That gives a fair idea of the difficulty the board was having with this claim.

The board made the following rulings of law:

"1. Where an employer relies upon evidence of a circumstantial nature, to prove an affirmative defense, the evidence so relied upon, must be of such definite, relevant consequences as to remove the element of a reasonable doubt, and sufficiently convincing to induce an honest belief, relative to the existence of the main fact, free from the influence of guess, speculation or conjecture.

"2. The board is not permitted to guess, speculate or theorize as to the cause of injury nor the manner of its inception, but must base its award upon sound, competent evidence of a relevant nature, reasonably definite and certain.

"3. If an employer submits competent and relevant evidence sufficiently definite and certain as to prove beyond a reasonable doubt that the injury complained of was both wilful and self inflicted, then and under such circumstances, the right to the recovery of compensation for the disability occasioned thereby, is defeated, and the claim of an employee guilty thereof, should be denied."

From this it is clear the board has acted upon an erroneous conception of how this evidence is to be weighed in determining the question before it.

This is a civil case, and the rule of evidence applied in civil cases is the rule to be followed. "In civil actions where the questions at issue are involved in doubt the preponderance of the evidence determines the rights of the parties, and to adjudge differently in this class of cases would be disregarding a plain elementary principle applicable to the trial of civil causes." Ætna Ins. Co. v. Johnson, 74 Ky. (11 Bush) 587, 21 Am. Rep. 223. Vol. 18 Ky. Digest, Trial. We had that question before us again in Sloan v. Gilbert, 12 Bush (75 Ky.) 51, 23 Am. Rep. 708, and we adhered to that rule.

We find our position is in harmony with the holdings of other states as will appear from these cases: Bice v. Steverson, 211 Ala. 103, 99 So. 639; Galloway v. United Railroads, 51 Cal. App. 575, 197 P. 663; Hess v. Hess, 41 Idaho, 359, 239 P. 956; Teter v. Spooner, 305 Ill. 198, 137 N. E. 129; Garrett v. Anglo-American Provision Co., 205 Ill. App. 411; Brooks v. Roberts, 281 Mo. 551, 220 S. W. 11; West v. Boston & Maine R. R., 81 N. H. 522, 129 A. 768, 42 A. L. R. 176; Yablonka v. Knickerbocker Ice Co. (Sup.) 161 N. Y. S. 257; Suravitz v. Prudential Ins. Co., 261 Pa. 390, 104 A. 754; A. L. Clark Lumber Co. v. Bolin, 97 Ark. 344, 133 S. W. 1116; Belzer v. Daub Storage Warehouse & Van Co. (Sup.) 130 N. Y. S. 153; Jones v. Riverside Bridge Co., 70 W. Va. 374, 73 S. E. 942; Kuenster v. Woodhouse, 101 Wis. 216, 77 N. W. 165.

The board's ruling of law is like a court's instruction to a jury; it is the law applicable to the case. The rule regarding instructions is well stated in 64 C. J. p. 722, sec. 632, wherein it is said:

"The term 'reasonable doubt' and similar expressions have no place in instructions in civil cases."

The board erred in its ruling that the coal company would have to establish beyond a reasonable doubt that Hall intentionally cut off his thumb in order to sustain its defense. What this board's finding of fact should be after its mind is freed of this error, we make no intimation, as that is for it to decide. When a person looks at an object through a colored glass, the object appears to be colored, whereas it is only the glass that is colored, so here this board cannot have taken an uncolored view of these facts in view of its discolored

view of the law through which it viewed the facts when weighing them.

The question is quite simple. Mr. Hall admits he cut off his own thumb, and claims compensation therefor because, as he says, he did it accidentally. He must prove that; he must sustain that burden. If he does so, by sufficient evidence, he should prevail; if not, the coal company should prevail. The board is correct in saying this is not to be determined by a guess, a supposition, a speculation, or a conjecture; those things are conclusions to which the mind comes because it is possible that the thing could have happened that way; they are not supported by proof and have no proper place in judicial administration. See Louisville & N. R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S. W. (2d) 257. On the other hand, an inference is a conclusion drawn by reasoning from proven facts, and has a rightful place in judicial administration. Fair examples of findings resting entirely on inferences without one item of direct evidence of participation are Crenshaw v. Com., 227 Ky. 223, 12 S. W. (2d) 336, Childers v. Com., 246 Ky. 751, 56 S. W. (2d) 352, Evans v. Com., 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360.

The judgment is reversed, and the cause will be remanded to the board, which will reopen and reconsider the case, keeping in mind what is said in this opinion, and it will make such finding of facts, such rulings of law, and such disposition of this claim as it may find proper and as may be consistent with this opinion.