## Black Mountain Corporation v. Strunk et al.
(Decided March 13, 1936).

B. M. LEE for appellant.

G. W. HATFIELD for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellee Strunk, a coal miner of ten years' experience, about twenty-seven years of age, while working in the mines of appellant on March 18, 1931, suffered a severe injury to his hand by the explosion of a dynamite cap, losing the first, second, and third fingers of the right hand and suffering such injury to the thumb and small finger as to further impair the use of the hand. The parties to the appeal will hereinafter be referred to as employer and employee.

In due time employee filed his request for adjustment of compensation, and proof was taken. Upon presentation of the case before one member, the proof of the employer on motion of employee was stricken, because of an alleged failure of employer to comply with rule 15 of the board, which required a presentation of a special plea of self-inflicted injury to be made at least five days prior to the day of hearing. There was an appeal to the full board, which sustained the ruling, with one dissent. Appeal was then taken to

the circuit court, the board's ruling reversed, and the case remanded. Upon remand it was heard by the board on all the evidence, with the result that the board found for employee, making an award, one member dissenting.

Appeal was then prosecuted by employer to the circuit court, and the cause submitted on all the evidence. The court upheld the board's ruling, it appearing that the only question presented was lack of proof to sustain the board's finding.

The employee, who was engaged in shooting, picking, and loading coal in employer's mine, was alone at the time of the accident, so we have only his testimony as to how it came about. Substantially, he testified that he had been loading coal, and started to put a dynamite cap away, and a piece of slate or rock fell and "caught my hand and put the cap off." He had theretofore been using the caps in shooting his coal, and before the last shot had taken two caps out of a metal box, but had only used one. He had shot down and loaded four cars that morning, and was making preparation to leave the mine, and was "putting this extra cap away, when the slate fell from off the side; draw rock, off the side of the rib." It appears there was a safety place or hole where miners were required to keep, and where employee kept the caps, when not actually in use, and this witness says he was preparing to put this cap in the safety place. So much of the above recital is that of employee's testimony on direct examination.

He was put through a strict cross-examination, with particular stress on just where he was, where he had his hand, and the general situation at the place and time of the accident. He said he had two caps in his box when he started out, and had used one. Asked if he had the remaining cap in the box when the explosion came, he replied:

"No, that is how it came to explode, on account of me having it and starting to put it in the box and put it in the hole in the rib when the slate fell and caught my hand."

He says the cap was in his "naked hand," and he started to put it in the box which "I supposed was

lying down right where I made up my powder and fixed to shoot." Pressed for a more definite explanation, employee said:

"My hand was down low. I had my work wrench and started to put it down like this, and I picked this cap up as I come up and started with my wrench and kept going to put my wrench at a place there and this piece of slate fell and caught my hand. It struck me in the palm of my hand. I had my hand turned up like that, with the cap on it. I don't think it was on the ground at the time."

Employee did not know how large the slate or rock was that he says struck his hand. "I didn't see the rock, I know something fell and put it off in my hand, and I supposed it was a rock." Asked, "Did your hand go to the bottom?" he replied, "Either that or a piece of rail lying across where this safety rib was," and further:

"How far away was the cap from the place where you kept these caps in the hole? Ans. It was about 6 or 7 feet away from where I took it when I was making up my powder."

There were several witnesses for employer, including the mine superintendent, mine foreman, and miners who were working at the time. The superintendent saw employee soon after he came out of the mine following the accident. He says that employee made the statement that he had the cap in the box and was putting it into the safety hole when a rock fell from the top and hit the cap. He described a safety hole as being a hole drilled two or three inches deep in the rib at a safe point, and was the place where a miner safely stores his cap box, usually 12 inches from the roof. This witness made examination the next day following the accident and found a part of the jacket cap; some blood on a piece of timber 5 or 6 feet from the safety hole 14 or 15 inches from the top of the timber, and on the opposite side from the safety hole, at which point he also found some pieces of skin stuck on the timber.

The witness says he made examination and found

no fallen rock or slate. He examined the roof and found no evidence of a rock having fallen, and said the pick marks on the wall were plain, and were such that showed no place from which a rock or piece of slate might have fallen:

"If the rock had fallen from the roof, the hole from which it fell would show, and if from the rib, the pick marks would have not been there."

The mine foreman testifies substantially to the same effect; he saw employee about a half hour after the accident, and says employee told him he was placing the cap back in the hole, and had the cap in the regular box, when the rock fell and hit his hand. This witness looked for the box, but found no part of it. His idea was that if the cap was in the box when the rock struck, the box would not have been completely destroyed, but would have been twisted and bent. A miner who made examination in company with the foreman testifies substantially to the same facts. He goes more into detail as to the finding of the blood and pieces of skin on the mine prop, which he says was a three-cornered timber with the point toward, and the flat side away from the safety hole; the blood marks and the adhering skin being on the flat side. This witness says there were two places on the post "like a hand had been struck by a timber and shot off; just spurted blood on the timber and then small pieces of skin. One finger was clear across by the rib. One was down close to the timber, and the other finger was torn all to pieces." Others testified similarly to the circumstances and surroundings, as they observed them.

It will be noted from the foregoing that the employer's theory was that the employee placed his hand with the cap in it on the side of the prop and struck it, exploding the cap, thus inflicting his own injury.

On rebuttal employee denied positively that he had made the statement attributed to him by the superintendent and foreman, to the effect that he had the cap in the box when the explosion occurred. In accounting for the blood and pieces of skin on the prop, he said he was "pretty close to the post, between

the post and the safety hole." He did not know whether or not he put his hand on the post, but said he "might have grabbed it." He says that he was suffering and dazed from the explosion, and hardly knew just what he did. Witness said he knew that other employees had inflicted injuries on themselves for the sake of getting compensation, and it was brought out that employee was not well off in the world's goods, and was making $4 per day at the time.

On this proof appellant asks the court to hold that the lower court erred in not accepting the proof of appellant. It is insisted since the burden is on employee to establish the fact that the injury was an accident arising in the course of employment, the evidence of employee is of no probative force, because "unreasonable, vague and uncertain," and his statements as to the means of the accident conflicted; further, that the circumstantial evidence of employer established the employer's theory of self-inflicted injury.

We have reviewed the evidence and cannot agree with appellant's contention. It may be that employee's evidence is not fully convincing or to some extent unsatisfactory, but we find little difficulty in concluding that there was sufficient evidence, and of probative nature, to justify the board and the circuit court in finding as they did, and to require us to follow the rule to the effect that its finding will not be overturned where there is evidence supporting it.

Concluding as we have indicated that there was proof of probative value, we have only to direct attention to cases holding that such being the case, we are precluded from undertaking to determine the weight or effect of the testimony, or from speculating as to which witness or witnesses were truthful in their statements.

Such decisions are numerous, dating back to the time when we first began to operate under the Compensation Statutes, and they have been followed not only in cases where the rule has been applied to the testimony of employee, but to such as is offered by employer.

In Madden v. Black Mountain Corporation, 238 Ky. 53, 36 S. W. (2d) 848, 850, we said:

"It takes less evidence to sustain the finding of the board than is required to sustain a verdict of the jury. There is no reason why the scintilla rule should not be applied by the board, the same as it is by the courts, in cases tried by a jury of the vicinage. The only question on an appeal in such cases to be determined by us, Is there any competent evidence upon which an award might be based? It is not our province to weigh the evidence heard by the board and determine the issues according to a preponderance of the evidence."

In Yeager v. Mengal Co., 260 Ky. 156, 84 S. W. (2d) 6, 8, we said:

"It is the purpose and intent of the statute and all decisions of this court thereunder, that the board can reject the theory of the case of either side and be controlled by the evidence or theory of the other side, even though the testimony is meager or merely of a negative character, provided such evidence is of any probative value or character having the effect of proof, and the findings of the board thereunder are conclusive, unless there is an entire absence of evidence to support them."

Other cases adhering to the rule are: Kentucky & West Virginia Power Co. v. Terry, 238 Ky. 187, 37 S. W. (2d) 36; Andrews Steel Co. v. McDermott, 192 Ky. 679, 234 S. W. 275; Consolidation Coal Co. v. Burns, 261 Ky. 353, 87 S. W. (2d) 967; Black Star Coal Co. v. Hall, 257 Ky. 481, 78 S. W. (2d) 343.

Judgment affirmed.