## Cornish's Guardian et al. v. Lexington Utilities Co. et al.

(Decided Oct. 5, 1937.)

WM. L. WALLACE and A. A. BABLITZ for appellants.

STOLL, MUIR, TOWNSEND & PARK for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On December 6, 1932, David Cornish, an employee of the Lexington Utilities Company, came in contact with an electric wire and sustained injuries from which he died. Thereafter the statutory guardian of Margaret Cornish, Janice Cornish, and Sherman Cornish, Jr., infants under 14 years of age, made claim for compensation on their behalf before the Workmen's Compensation Board, claiming that they were wholly dependent upon the deceased employee. Before final award was made, Sherman Cornish Jr., died, but the proceedings continued on behalf of the other infants.

In a hearing before one member of the board, a referee rendered an opinion and award holding that Margaret Cornish and Janice Cornish were totally dependent on their deceased uncle, David Cornish, and entitled to recover the sum of $12 per week for 335 weeks. On motion of the employer a full board hearing was granted which resulted in affirmance and confirmation of the award made by the referee. A motion to reconsider the award made by the employer was sustained and upon reconsideration the former award was set

aside and a new award made, finding that the infant applicants were partial dependents of the deceased employee to the extent of 50 per cent. and awarding them the sum of $6 per week for a period of 335 weeks, to be apportioned between them at the rate of $3 per week.

On petition for review to the circuit court of Fayette county by the guardian of the infants, it was adjudged that the petition for review be dismissed and the award of the compensation board be affirmed. This appeal is from that judgment.

It is stipulated that the employer was operating under the provisions of the Compensation Law and that the deceased employee had accepted the provisions of that act and that his average weekly wage at and prior to his death amounted to $24.15 per week.

We find counsel for respective parties in agreement that the only question presented by this appeal is whether there is evidence to support the award made by the board. It is contended by counsel for appellant that the evidence establishes that the infant claimants were wholly dependent upon their uncle, the deceased employee, and that there was no evidence of probative character or effect to sustain a finding of a lesser degree of dependence. Appellee, of course, takes the contrary view and argues that there is evidence to support the board's finding of partial dependence.

Some months prior to February, 1932, the father of the three children died, leaving them and their mother in utterly destitute circumstances. After the death of their father, the mother took the children to the home of her father at or near Carlisle, Ky., who was a tenant farmer and a man of very limited means. David Cornish was very solicitous about the welfare of the chil dren, and often visited them while they remained at the home of their grandfather and supplied them with necessary clothing. In February, 1932, he took the mother and children into his home in Lexington, and the children remained with him until his death. The mother took over the management and supervision of the household affairs, the wife of David Cornish having died some months previous to their coming. In April, 1932, the mother of the children was compelled to go to a tuberculosis sanitorium from which she never returned. In a week or so after she went there, C. C. Cornish, a brother of David Cornish, and his wife moved into the home of

David Cornish which was located on Limestone street, but about 10 days thereafter David Cornish, his brother, sister-in-law, and the three children moved into a home on Shropshire avenue, where they lived as one family until the death of the former.

There is practically no dispute as to the facts as above stated up to this point, but the controversy is over the arrangement under which the family lived in the home on Shropshire avenue. The evidence shows that David Cornish furnished all the food for the entire family, his grocery bill amounting to approximately $40 per month. He paid the water, light, and gas bills amounting to $5 or $6 per month. There is also evidence that he furnished the children clothing, but that they were well supplied in this respect when they moved to Shropshire avenue, and according to the evidence of Mrs. C. C. Cornish he spent only $5 or $6 for their clothing after they moved to the Shropshire avenue home. C. C. Cornish testified that he paid a part of the rent on the home and that his brother paid a part, but the evidence of Mrs. Cornish is to the effect that she made the arrangement with the owner of the house to rent it and that she and her husband paid the rent, which was $22.50 per month, for the entire time they lived on Shropshire, except that David Cornish contributed $12 on the first month's rent. Her evidence indicates that it was the agreement and understanding that she and her husband were to pay the rent for the house and that she would do the cooking, housekeeping, and care for the children and that David Cornish would furnish the food and pay the water, light, and heat bills, and her evidence indicates that this arrangement was carried out by all the parties except that she did not pay the rent for the month preceding the death of David Cornish but that was made a claim against the estate. The evidence shows that C. C. Cornish was a World War veteran receiving a pension or compensation of $35 per month and that his wife received compensation in the sum of $15 per month. He testified that he spent about $20 per month for personal effects and on bills that he owed. Mrs. Cornish testified in effect that they all lived together under the agreement and understanding above indicated as a matter of convenience and economy for all parties concerned; however, she stated on cross-examination in substance that the services rendered by her in caring for the home and the rent paid by her were simply in the nature of

rental to David Cornish for her and her husband staying there.

While, as contended by counsel for appellant, it is true that under the provisions of the law (Kentucky Statutes, sec. 4987) and the decisions of the court the law should be liberally construed, Billiter etc. v. Hickman, 247 Ky. 211, 56 S. W. (2d) 1003; A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S. W. (2d) 1; Valentine et al. v. Weaver, 191 Ky. 37, 228 S. W. 1036, 1038, yet in the latter case it is said:

"But this does not mean that the elementary and fundamental principles of a judicial inquiry should not be observed. The act permits liberality in investigation and no more, and when incompetent and irrelevant testimony has been excluded, the findings and award must rest upon some competent and relevant evidence of a sound, probative character, be it direct or circumstantial. * * * When the evidence is all in, it must be sifted and assorted. The competent separated from the incompetent, and out of the testimony there must come some reliable and substantial evidence, as understood by the common-law rules of evidence upon which a verdict must rest."

The courts must upon review deal with the facts as found in the record and determine them according to rules above indicated. Under the Compensation Act there was in this instance no presumption of total dependence, Kentucky Statutes, sec. 4894, and it was therefore incumbent upon appellant under the provisions of section 4893 of the Statutes to establish dependence and the duty of the board under all the proven facts and circumstances to determine the degree of such dependence. See East Kentucky Coal Co. v. Johnson et ux., 229 Ky. 606, 17 S. W. (2d) 708; Kentucky Coke Co. v. Baker, 242 Ky. 807, 47 S. W. (2d) 721. Where there is competent and relevant evidence to sustain the award made by the board, it is conclusive on the court. Black Mountain Corporation v. Strunk, 263 Ky. 234, 92 S. W. (2d) 66; Hale v. State Highway Commission, 262 Ky. 753, 91 S. W. (2d) 23.

While our consideration of the evidence as above recited leaves a distinct impression that a more liberal finding might have been made for appellants and a higher degree of dependence sustained, that was a mat-

ter for the board and not for the court to determine, and the court is precluded by the finding of the board if it is sustained by evidence of a substantial and probative character. It is quite apparent from the proven facts and circumstances that there is evidence of that nature and character to sustain the board's finding.

Judgment affirmed.