## AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al. v.* CURRY.

No. 12249.   NOVEMBER 15, 1938.   REHEARING DENIED DECEMBER 8, 1938.

*Neely, Marshall & Greene,* for plaintiffs in error.

*J. M. Hancock* and *Thomas A. Jacobs Jr.,* contra.

ATKINSON, Presiding Justice. ■ The ruling announced in the first headnote does not require elaboration.

■ The Court of Appeals, after stating certain facts, ruled that "the inference is authorized that the custom of hauling the employees to and from the mill on the truck of the employer became a part of the contract of employment by implication," and consequently "where one of the employees, when returning from the mill on the truck, was injured by falling from the truck, his injury arose out of and in the course of the employment. *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256 (175 S. E. 577, 97 A. L. R. 556)." And, "There being no other issue presented, the judge of the superior court did not err in affirming the award" of compensation. The uncontradicted evidence shows the following material

facts pertinent to the question for decision. The Central Cotton-Oil Company was proprietor of a cottonseed oil plant located in the City of Macon, which it had operated for a number of years. In connection with its business it operated an automobile truck during work hours for hauling and delivery of its individual goods. The work hours were from 7 o'clock in the morning until 5:30 o'clock in the evening. For its convenience the company acquired storage facilities for its truck at the Southland garage located in the city about one and one half miles from the plant. Each day after work hours an employed driver would drive the truck from the plant to the garage solely for the purpose of storage, and on the following morning before work hours he would drive the truck from the garage to the plant for use in hauling and delivery of the company's goods. There were a large number of employees living at various places in the city and in the vicinage of the plant. The residences of some of these were accessible to the usual line of travel of the truck between the plant and the garage. Such of the employees as desired to do so in going to and from their homes to the plant were, within the knowledge and without objection from the company, permitted by the driver without pay to catch rides on the truck on its daily travel between the plant and the garage. Dorsey Curry was one of these. He lived in the city about one mile from the garage, and usually entered or left the truck at Poplar and Fifth streets or at the garage. After working hours on Tuesday July 14, 1936, Curry with other employees entered the truck at the plant as it left for the garage, intending to go to their respective homes. On the way Curry fell from the truck on a curve as it passed under a railroad-track, sustaining injuries from which he died on the following day. The driver on that occasion carried Curry to his home on account of his injury. Curry was regularly employed by the day, not for any particular time, and paid by the week for the days he had made. He had finished his work for the day and left the premises of the company when the injury occurred. There was no express agreement that as a part of the employment or incidental thereto Curry or the other employees should have a right to ride on the truck.

The proceeding is of the same character as that involved in *Ocean Accident and Guarantee Cor.* v. *Farr*, 180 *Ga.* 266, 270 (178 S. E. 728), where it was said: "The proceeding was not an action

by an employee against his employer for damages for failure to provide a safe place in which to work, or for other cause, but was a statutory proceeding under the Georgia workmen's compensation act (Ga. L. 1920, p. 167; Code of 1933, § 114-101 et seq.), which provides for compensation by an employer to his employee for an injury by accident 'arising out of and in the course of employment.' . . It was said in *Georgia Casualty Co.* v. *Martin,* 157 *Ga.* 909, 915 (122 S. E. 881): 'The workmen's compensation act in part is intended "to establish rates of compensation for personal injuries or death sustained by employees in the course of employment." In subsection (d) of subsection (8) of section 2 of the act, "injury" and "personal injury" shall mean only injury by accident arising out of and in course of the employment.' " Referring to such class of cases, it was said in Hama Hama Logging Co. *v.* Department of Labor and Industries, 157 Wash. 96, 101, 102 (288 Pac. 655): "If at the time of the injury Spears was engaged in or was furthering his employer's business, he was injured 'in the course of his employment.' If Spears was injured at a time when he was doing something solely for his own benefit or accommodation, he was not injured 'in the course of his employment.' . . The logging company merely permitted or authorized its employees to ride on the speeder free of charge, as a convenience to the employees, and not in the furtherance of its business. This is not a case wherein the employer has agreed to transport its employees to and from their work daily as a part of its contract with them." In Venho *v.* Ostrander Railway & Timber Co., 185 Wash. 138, 139 (52 Pac. (2d.) 1267), it was said: "The sole question is: Was plaintiff, at the time of his injuries, 'in the course of his employment,' in contemplation of the workmen's compensation act? It is the general rule (to which this court adheres) that a workman injured going to or from the place of work is not 'in the course of his employment.' There is an exception, however, as well established as the rule itself. The exception, which is supported by overwhelming authority, is this: When a workman is so injured while being transported in a vehicle furnished by his employer as an incident of the employment, he is within 'the course of his employment,' as contemplated by the act. In other words, when the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment

begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor. This exception to the rule may arise either as the result of custom or contract, express or implied. It may be implied from the nature and circumstances of the employment and the custom of the employer to furnish transportation." See 1 Honnold on Workmen's Compensation, 375, § 110.

In the recent case of Wood v. Chambers Packing Co., 190 Wash. 41 (68 Pac. (2d) 221), the pertinent facts were thus stated: "Appellant had, for many years prior to the time of the accident, been intermittently employed in the state highway department. On and prior to November 2, 1934, he was engaged in reconstruction work on the paved road between Hoquiam and Humptulips, covering a distance of about 17 miles. The highway department maintained a local office at Hoquiam, at which the workmen congregated in the morning and to which they returned in the evening before repairing to their respective homes. Work began at 8 a.m., at which time the members of the various crews started from the office, and ended at 5 p.m. upon their return to the same point. In connection with its operations, the highway department owned and maintained a Ford automobile, made over into a light truck, which was used daily for carrying the men and their tools and equipment from the office to, and between, the several stations at which the work was being performed, and back again to the office at the end of the day. At night, the automobile was kept at an all-night garage in Aberdeen, which is about 2 miles from Hoquiam. It appears that formerly the local office had been located at Aberdeen, and at that time the automobile had been kept in the garage above mentioned. According to the evidence, the garage at Aberdeen was more convenient and suitable for the department's needs than any garage that might have been obtained at Hoquiam, even after the removal of the local office to the latter place. It also appears by the evidence that a number of the workmen, including appellant, lived at Aberdeen, and that, in going to Hoquiam in the morning and returning in the evening, they generally rode in the Ford automobile as it made its trips between the office and the garage. That, however, was a matter which was left to each individual workman's convenience and choice. If any one of them wished to use the automobile in the morning, he could do so by reporting at

the garage by 7:30, or, in the evening, after work by taking passage in the automobile when it left the office on its trip to the garage. There was, however, a regular bus service between Hoquiam and Aberdeen, which the men could use, if they wished. They could also drive their own cars, which some of them frequently did. According to appellant's evidence, he used the Ford automobile about one half or two thirds of the time. At other times he accompanied other workmen to or from the local office in their privately owned cars." It was held that the appellant was not a workman in the course of his employment at the time of the injury. In the opinion it was said: "It clearly appears from what has already been said concerning the evidence herein that, at the time of the accident, appellant's work for the day had ended, his pay had stopped, and his employer's authority over him had ceased. Appellant was then no longer engaged in furthering his master's interests. He was simply on his way home, on his own time, over a route, and in a vehicle which he could follow and use according to his own choice and volition. [2] A person, while going to or returning from his place of work, is not a workman 'in the course of his employment,' unless the means of transportation used by him has been furnished by his employer as an incident to, or as part of the contract of, his employment. Hama Hama Logging Co. v. Department of Labor and Industries, 157 Wash. 96, 288 P. 655; Hobson v. Department of Labor and Industries, 176 Wash. 23, 27 P. (2d) 1091; Venho v. Ostrander Railway & Timber Co., 185 Wash. 138, 52 P. (2d) 1267, 1268; 1 Honnold on Workmen's Compensation, p. 375, § 110. In the Venho case, the rule and exceptions are set forth discriminatively in the following language: 'It is the general rule (to which this court adheres) that a workman injured going to or coming from the place of work is not "in the course of his employment." There is an exception, however, as well established as the rule itself. The exception, which is supported by overwhelming authority, is this: When a workman is so injured, while being transported in a vehicle furnished by his employer as an incident of the employment, he is within "the course of his employment," as contemplated by the act. In other words, when the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the

vehicle and ends when he leaves it on the termination of his labor.' To the same effect are the following cases from other jurisdictions: DeVoe v. New York State Railways, 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917 A, 250; Tallon v. Interborough Rapid Transit Co., 232 N. Y. 410, 134 N. E. 327, 21 A. L. R. 1218; Enterprise Foundry Co. v. Industrial Accident Commission, 206 Cal. 562, 275 P. 432; Orsinie v. Torrance, 96 Conn. 352, 113 A. 924; Leveroni v. Travelers' Insurance Co., 219 Mass. 488, 107 N. E. 349; Hills v. Blair, 182 Mich. 20, 148 N. W. 243; Dent v. Ford Motor Co., 275 Mich. 39, 265 N. W. 518. [3] Appellant comes squarely within the rule above stated, and not within the exception thereto. The automobile in which he was riding at the time of the accident was not furnished as a part of appellant's contract of employment, nor was its use by him made, at all, for the benefit of his employer to facilitate the progress of the work. It was merely an available means of transportation adopted by appellant for his own accommodation."

A similar ruling was made in Billiter v. Hickman, 247 Ky. 211 (56 S. W. (2d) 1003). Where the facts were set forth as follows: "Hickman received wages at the rate of $12 a week, his employment or pay being computed from his daily commencement upon the actual road work to which assigned. The contract of employment did not either expressly or impliedly provide for the transportation of the employees to their places of work upon the road. However, it is admitted that it was customary for these road hands to ride out from Flemingsburg to their several places of work along the road in their own cars, cars of friends, the company's trucks, or hired trucks. This method of going to and from their road work was neither authorized nor prohibited by the appellant, who, it appears, had witnessed the existence of this practice among the employees without objection thereto. Rather it is admitted the employees were left to find and choose their own way of reaching their places of work, whether by walking or by catching rides upon trucks or cars of friends. On the morning of December 18, upon which the accident occurred, William E. Hickman was, about 6 o'clock, walking from his home in Flemingsburg along this newly constructed highway to resume his work of sweeping off its berms at the point where he left off this work the day before, and had reached a point about 1½ miles therefrom when he was

passed on the road by C. D. Jewett. Jewett was then foreman in this shouldering and berm dressing work, who states that upon seeing Hickman he slowed up and stopped for Hickman, who jumped on the running board of his car; that he had driven his car about a quarter of a mile when Hickman hollered that his hat had fallen off; that he then applied his brakes and stopped his car, and when he and Kelly Layman, also an employee of the appellant company, who was then riding with him, looked back, they saw Hickman lying in the road where he had fallen upon his head, inflicting injuries from which he later died that day." In the opinion it was said: "In the instant case it was optional with Hickman by what method he would go to the place where his work and employment would commence, as to whether he would ride or walk thereto. His employer did not include the privilege of transportation from his home to his work within the terms of his employment, either expressly or impliedly. The undisputed facts clearly show that the employer never intended to include transportation to his work as an incident of his employment or the hazard involved in such mode of transportation or use of the highway as one of the risks of his employment or incidental thereto. [4] Neither are we of the opinion that the contention made by appellee that the practice here showed by the evidence of the employees frequently riding to their work, both upon trucks and other cars or vehicles upon which they might secure free transportation, constituted any such adoption by the employer, through its permitting this practice of it as a 'custom' so as to annex the danger thereof to the employment. The rule as to when a practice is such in its nature and extent as to become a custom, constituting a part of the employer's contract, is clearly set out in the yet unpublished opinion handed down by us in the case of A. H. Aulich et al. v. Hugh V. Craigmyle et al. [248] Ky. [676], [59] S. W. (2d) [560], decided January 31, 1933, as follows: 'A practice to arise to the dignity of a custom so as to enter into and form a part of a contract must possess those elements of certainty, generality, fixedness and uniformity, as are recognized by the law as essential to constitute a custom. A loose, variable or discretionary practice does not arise to the dignity of a custom so as to control the rights of the parties to a contract. If the usage leaves some material element to the right of exercising an option, or discretion, of one of the

parties, it does not constitute a custom.' Guided by the principles announced in these cited cases, and having reached the conclusion that under the special facts of this case the deceased Hickman, at the time of receiving his accidental injury, while riding on Jewett's car, was not then acting in the course of his employment nor at that time and place was he engaged upon an act connected with or in furtherance of his employer's business, it follows that the accident causing and resulting in his death was not one arising out of or in the course of his employment." See also in this connection Schultz v. Beaver Products Co., 223 App. Div. 582 (229 N. Y. S. 134) (affirmed by Court of Appeals, 250 N. Y. 565, 166 N. E. 326) ; Walker v. Hyde, 43 Idaho 625 (253 Pac. 1104) ; Bass v. Shreveport Pipe Line Co., 4 La. App. 107; Gruber v. Mercy, 7 N. J. Misc. 241 (145 Atl. 106) ; Thetford v. London Guaranty Co., (Tex. Civ. App.) 286 S. W. 1113; Oklahoma Gas Co. v. Stout, 179 Okla. 312 (65 Pac. (2d) 477) ; Denver Railway Co. v. Industrial Commission, 72 Utah 199 (269 Pac. 512, 62 A. L. R. 1436) ; Erickson v. St. Paul Railway Co., 141 Minn. 166 (169 N. W. 532) ; Morucci v. Susquehanna Collieries Co., 297 Pa. 508 (147 Atl. 533).

"The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." Code, § 20-704 (3). In *Citizens & Southern Bank* v. *Union Warehouse &c. Co.*, 157 *Ga.* 434 (122 S. E. 327), it was said: "To make a usage and custom of trade binding, it must be known, certain, uniform, reasonable, and not contrary to law. *Berry* v. *Cooper*, 28 *Ga.* 543 (3) ; 17 C. J. 452, note 48. An alleged usage, which leaves some material element to the discretion of the individual is void for uncertainty. Such an usage would be void because useless. It would be like an automobile without gears. Wallace v. Morgan, 23 Ind. 399; Minis v. Nelson, 43 Fed. 777; Oelricks v. Ford, 64 U. S. 49, 62 (16 L. ed. 534). This is so for the reason that the office of a custom or usage is to interpret the otherwise indeterminate intentions of the parties. The Reeside, 2 Sumner, 567; *Mutual &c. Ins. Co.* v. *Ruse*, 8 *Ga.* 534, 541." It is stated in 17 C. J. 453, § 11: "A custom must be compulsory, and not left to each one's option to obey it. Likewise a usage, in order to be regarded as entering into a contract, must be clearly distinguished from mere acts of courtesy or accommodation." Note 56 to this text cites *Madden* v.

*Blain,* 66 *Ga.* 49, in which an effort to set up a custom among physicians not to charge for medical services rendered to other physicians and their families was denied. In the instant case the gratuitous and permissive riding on the truck by Curry in going forth and back between his home and his place of work by mere. favor not in furtherance of the company's business was not such as to justify the conclusion that a right to do so became by implication a part of the contract. The Court of Appeals cited *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256 (supra); but that decision did not deal with the question of a custom becoming by implication a part of the contract, and on that question it does not support the ruling of the Court of Appeals.

■ There can be no question, under the pleadings and the evidence, that Curry's employment or place of work was at the plant of the company in Macon; that his employment was by the day; that he lived in the city less than three miles from the plant; that he could have walked to and from his place of work; that at the time of his injury his work for the day had been completed; that he had left the premises of his employer and was on his way to his home; that his time was his own, unrestricted and unaffected by his employment to go whence and how he pleased; that he was doing nothing in the furtherance of the company's business. In these circumstances a finding was demanded that the injury did not arise out of and in the course of his employment. On this phase the case differs on its facts and is not controlled by the decision in *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256 (supra), where the evidence was held to authorize a finding that the *employment began at the mill* near Cooper's home, the work to be performed by him being twenty miles in the country, involving travel by him twenty miles from the mill in the morning and return in the evening from the place of work to the mill. The injury occurred in the morning while he was on his way from the mill to the place of work in furtherance of the business of his employer. That was not a case where an employee had finished his work for the day and left the place of work to go to his home. The case is also different on its facts from *United States Fidelity & Guaranty Co.* v. *Waymick,* 42 *Ga. App.* 177 (155 S. E. 366), affirmed in 173 *Ga.* 67 (159 S. E. 564), where the employee with others was employed by a contractor to go on an expedition to a

## 360

remote place to decorate the interior of a building, the contractor arranging with the owner for lodging of his employees at one place and transportation by automobile between that place and the building, and the injury was caused by the falling of the employee from the automobile on its return after work hours to the lodging place.

*Judgment reversed. All the Justices concur, except Russell, C. J., dissenting, and Grice J., disqualified.*