DI NICOLA v. PENNSYLVANIA R. CO.
No. 122, Docket 20404.

Circuit Court of Appeals, Second Circuit.
Dec. 26, 1946.

Ralph E. Hemstreet, of Brooklyn, N. Y., and Louis J. Carruthers, of New York City, for appellant.

Benedict S. Rosenfeld, of Merrick, L. I., N. Y. (Bernard Meyerson, of Brooklyn, N. Y., on the brief), for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, entered upon the verdict of a jury, awarding damages to the plaintiff's intestate, a seaman, arising from his death while serving on one of the defendant's harbor tugs. The defendant raises two objections upon this appeal: (1.), the inadequacy of the evidence in support of the verdict; (2.), the conduct of the plaintiff's attorney at the trial. The decedent was a deckhand on the tug, "Pittsburgh," which was at the time operating on the New Jersey side of the Hudson River at night in December. She had been tied alongside another tug, which lay at a wharf, and the decedent had thrown off the fasts that held the two tugs together. The "Pittsburgh" began to back out, and at some time, not definitely ascertained, the decedent fell overboard; while the tug continued to move astern, her captain heard the cry, "man overboard," at which he turned on his searchlight and saw the decedent struggling in the water between the tugs, though just where, the testimony left uncertain. The plaintiff called the tug's master to the stand, and he was examined at great length by both sides; parts of his testimony supported the conclusion that the tug had been within a few feet of the drowning man, and concededly the master did nothing to rescue him before he sank. From other parts of his testimony the jury might have concluded that he could have done no more than to throw a "life ring" overboard, and that there were already two or three in the water within reach of the decedent. The testimony of one, Vaughan, indicated that the decedent was within ten feet of the tug which had remained at the wharf, in which case he was a substantial distance from the "Pittsburgh."

The defendant's chief contention appears to be that it owed no duty whatever to the decedent to rescue him after he fell overboard; and that we wholly repudiate. We follow the rulings of the Fourth Circuit in Harris v. Pennsylvania Railroad Co.[1] (which the Supreme Court appears to have approved in Cortes v. Baltimore Insular Line[2]), and of the Third in Kirincich v. Standard Dredging Co.[3] It still can be argued that the plaintiff failed to prove that anything which the tug could have done, would have saved the decedent. That was indeed an open question; in the jury's place we are not sure that we should have answered it in the plaintiff's favor. Nevertheless, we do not think that the testimony left it so clear that the tug could have done nothing effective, that it was proper to direct a verdict. Zinnel v. United States Shipping Board Emergency Fleet Corp.[4]

Upon the other point we are in more doubt. It is quite true that the plaintiff had to rely upon the tug master for substantially all her evidence; moreover, he was a hostile witness and it was permissible to cross-examine him—Federal Rules Civil Procedure, rule 43(b), 28 U.S. C.A. following section 723c. Nevertheless, that privilege was abused; the witness was constantly interrupted in his answers; categorical answers were unnecessarily demanded; and the general impression gained from a reading of the direct and re-direct examination is of rudeness and hectoring which were wholly inexcusable, and from which the judge should have protected the witness. It is plausible that this confused the witness and was the cause of some of the inconsistencies which developed in his testimony; it is even possible that he was so harried that the entire truth did not come out. We should, however, be pressing more out of the record than we can find in it, if we sent the case back for another trial, though we have been tempted to do so. However proper that might be as a rebuke to the plaintiff's attorney, it

858

would scarcely be just as between the parties; for the defendant was allowed freely to question the witness, and, so far as we can see, the examination, which covered more than one hundred thirty printed pages, brought out all that he really knew. Moreover, we have no reason to suppose that the conduct of the attorney turned the jury against the defendant; it is quite as likely that it prejudiced the plaintiff. The person really aggrieved was the witness, and we cannot now give him any redress for the usage which he received at the trial.

Judgment affirmed.