Grace FRANK, Administratrix of the Estate of Daniel Frank, Deceased, Appellant,

v.

UNITED STATES of America, Daniel S. Kowalski and Charles Januscz, Appellees,

and

Daniel F. Kowalski, Charles Januscz and THE Cabin Cruiser SEA CAPTAIN, Formerly Known as THE ORION, Her Engine, Tackle, Etc., Respondents-Impleaded,

and

Paul F. Zisa, Claimant of The Cabin Cruiser Sea Captain.

No. 12251.

United States Court of Appeals Third Circuit.

Argued Nov. 7, 1957.

Decided Dec. 16, 1957.

Louis R. Harolds, New York City, William L. Standard, New York City, Advocate (Morris F. Pearlman, Proctor, Jersey City, N. J., on the brief), for appellant.

William W. Ross, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Chester A. Weidenburner, U. S. Atty., Newark, N. J., Paul A. Sweeney, Atty.,

Dept. of Justice, Washington, D. C., on the brief), for appellees.

Before MARIS, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Appellant is the administratrix of Daniel Frank who was drowned in the ocean very near the New Jersey shore under circumstances which, in appellant's view, obligate the United States to pay damages to Frank's dependents. Claiming that either negligence of employees of the government within the meaning of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, or negligence of a public vessel covered by the Public Vessels Act, 43 Stat. 1112, 46 U.S.C.A. § 781, caused Frank's death, appellant filed this libel asserting that one of the above cited statutes, supplemented, as Congress has authorized, by the New Jersey Wrongful Death Act, N.J.S.A. § 2A:31–1, provides a legal basis for recovery against the United States.

Decedent was a passenger on a thirty foot cabin cruiser during a fishing expedition off the New Jersey coast. Returning in midafternoon, the cruiser became disabled, because of engine failure, and anchored less than four hundred yards off Sandy Hook. The weather was clear, but the velocity of the northwesterly wind had risen to about twenty-five miles per hour. In addition, there was a strong tidal rip running toward the shore and creating breaking waves four feet or more in height. Small craft warnings were flying from the Coast Guard Lifeboat Station at Sandy Hook. All but one of the Coast Guard boats suitable for towing the disabled cruiser were out assisting other craft in the rough seas. The only available boat, a heavy motor lifeboat, was dispatched to assist the disabled cruiser and took it in tow.

During the tow Frank attempted to walk along the deck of the cruiser to the after cabin, holding a handrail as he proceeded. The cruiser heeled sharply, the handrail broke and Frank fell into the sea. The lifeboat crew immediately cut the tow line and made every effort to rescue Frank. However, he drowned before they could be of assistance to him.

Appellant contends that several derelictions of the Coast Guard were responsible causes of Frank's death. First, the lifeboat had a defective reverse gear which delayed it in reaching Frank after he fell into the sea. Second, the life rings in the lifeboat were so secured that they could not immediately be thrown overboard. Third, the crew of the lifeboat was less than the standard and customary Coast Guard complement.

The district court found for the United States on the ground that the plaintiff had not carried her burden of proving that the attempted rescue failed because of any of the faults of the Coast Guard. We agree that the United States was entitled to judgment, but place our affirmance on a different ground.

On appellant's own theory the effect of the alleged faults of the Coast Guard was to prevent its own rescue party from reaching the drowning man soon enough to save him. There has been no showing that any fault of the Coast Guard contributed in any way to Frank's falling into the sea. Nor did the Coast Guard in any way worsen his plight thereafter. In saying this we have not overlooked a suggestion on this appeal that the Coast Guard may have worsened Frank's position by taking the cruiser in tow. No such finding was made below and on the evidence such a finding could not reasonably have been made. The present claim must stand or fall on the theory that the Coast Guard was at fault solely in failing to get help to the decedent as soon as would have been the case had the rescue vessel been in proper condition and properly equipped and manned.

If the United States is liable at all for negligence of the Coast Guard in connection with an attempted rescue operation, the responsibility of this public agency rises no higher than that of a private salvor. Upon that limitation the full bench of this court was agreed in P. Dougherty Co. v. United States, 3 Cir., 1953, 207 F.2d 626, certiorari denied 347

U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1068, although on other points we were divided. We recognized that the Coast Guard, like a private salvor, renders voluntary assistance where no duty to help is owed the person or vessel in distress. True, it is a statutory function of the Coast Guard to establish and operate rescue facilities. 14 U.S.C. § 2. Congress has also provided that the "Coast Guard may render aid to persons and protect and save property at any time and at any place at which Coast Guard facilities and personnel are available and can be effectively utilized." 14 U.S.C. § 88(b). But this legislation falls short of creating a governmental duty of affirmative action owed to a person or vessel in distress. Lacey v. United States, D.C.Mass.1951, 98 F.Supp. 219; see Indian Towing Co. v. United States, 1955, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48; cf. Restatement, Torts, § 314. An obligation to render aid may grow out of a relationship such as master and servant or ship and crewman. Kirincich v. Standard Dredging Co., 3 Cir., 1940, 112 F.2d 163; Di Nicola v. Pennsylvania R. R., 2 Cir., 1946, 158 F.2d 856; Sadler v. Pennsylvania R. R., 4 Cir., 1947, 159 F.2d 784. But there is no such relational basis for a duty here.

In the absence of any duty creating relationship the responsibility of a volunteer is strictly limited. He may be liable if the injured person has been harmed because of reliance upon some representation concerning the voluntary service. Indian Towing Co. v. United States, supra. More generally, if an attempted rescue or other voluntary service is so conducted that it affirmatively injures the one in distress or worsens his positions, there may be liability. United States v. Lawter, 5 Cir., 1955, 219 F.2d 559; Eastern Air Lines v. Union Trust Co., 1955, 95 U.S.App.D.C. 189, 221 F.2d 62, affirmed per curiam, United States v. Union Trust Co., 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796; Restatement, Torts, §§ 323, 324. But again, we have in this case none of these special liability creating factors. We have only a diligent rescue effort which proved ineffectual for lack of adequate equipment, preparation or personnel. For such ineffectual effort a private salvor is not liable. See the citation and elaborate analysis of the leading cases by Chief Judge Biggs, dissenting in P. Dougherty Co. v. United States, supra, 207 F.2d at pages 643–648. By parity of reasoning the United States also is relieved of liability in this case.

The judgment will be affirmed.