37226. FIREMAN'S FUND INDEMNITY COMPANY *v.* BUICE *et al.*

DECIDED SEPTEMBER 4, 1958—REHEARING DENIED SEPTEMBER 22, 1958.

T. J. Long, Ben Weinberg, Jr., for plaintiff in error.
Hurt, Gaines, Baird, Peek & Peabody, J. Corbett Peek, Jr., Harold Sheats, contra.

FELTON, Chief Judge. The policy provisions relied on by the insurer are as follows:

"III. Definition of Insured. With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the named Insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named Insured or with his permission. The insurance with respect to any person or organization other than the named Insured does not apply. . .

"(b) To any employee with respect to injury or to sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

"This policy does not apply: . . .

"(d) Under coverage A and C, to bodily injury to or sickness, disease or death of any employee of the Insured while engaged in the employment, other than domestic, of the Insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law."

At the time of the collision the vehicle was en route from Atlanta to Valdosta and was being driven by the insured's president, Thomas P. Bentley.

The evidence authorized the court to find that Buice was employed by the insured as a sheet metal superintendent; that the insured was doing work in Valdosta, Georgia, and Buice had been going to Valdosta off and on for a year and a half to supervise some of the work being done there; that during that period of time Buice had been to Valdosta approximately eight or ten times; that at times he would drive a company truck to Valdosta provided Besco was sending materials down for the job in that truck; that on other occasions he would ride with other workers employed by Besco; that out of the total number of trips he made down, possibly five or six times he went with other employees; that the following testimony of Mr. Buice explained why Mr. Buice was riding in the insured's truck at the time of the collision: "Well, the day previous to the accident Mr. Bentley

told me about noon or a little before maybe that they needed me in Valdosta to check out some trouble that they were having down there on the air conditioning system, and told me he wanted me to be down there the next morning. I told him all right, and then later that afternoon, he decided to make the trip himself, and said as long as he was going, why didn't I just come on and go along with him and save me driving my car or getting down there whichever way I was going. And that is how it come about that time, so I taken the truck on home, which is on the way to Mr. Bentley's and eat supper"; that after he had eaten supper Mr. Buice went by Mr. Bentley's home, picked him up and proceeded on to Valdosta; that the truck was loaded with equipment for the Valdosta job; that he was paid on an hourly basis and worked forty hours a week; that his workday was from 8 a.m. to 4:30 p.m.; that Besco was not particularly interested in how Mr. Buice got to Valdosta so long as he was there to begin work at the appointed time; that it was Mr. Buice's responsibility to be on the job at the appointed time; that if the insured had a truck going to Valdosta, for the sake of convenience, Mr. Buice was allowed to ride down on that truck.

The court was authorized to find that the insured did not furnish Buice transportation to the job at Valdosta as a part of his employment contract and as an incident thereto and was further authorized to find that furnishing transportation to Buice had not become a part of the employment contract or an incident to his employment by implication by reason of custom.

We are not called on to decide the question whether the same criterion and standard is used in determining what constitutes course of employment in private contract cases and in workmen's compensation cases, but assuming for the sake of argument they are the same and using the rule set out in workmen's compensation cases for determining such cases, in the instant case at the time of the collision Buice was not in the performance of his employment duties and was not injured in the course of his employment. See *American Mutual Liability Ins. Co.* v. *Curry,* 187 *Ga.* 342 (200 S. E. 150); *Wilcox* v. *Shepherd Lumber Corp.,* 80 *Ga. App.* 71 (55 S. E. 2d 382); *Norwich Union Indem. Co.* v.

*Johnson,* 36 *Ga. App.* 186 (136 S. E. 335). The principle applicable in "traveling salesmen" compensation cases is not applicable here.

The court did not err in finding that at the time he was injured Buice was not "engaged in the employment of the insured" and was not "injured in the course of such employment" and in holding that the contract of insurance afforded the defendant Besco coverage in the collision under consideration.

*Judgment affirmed. Quillian and Nichols, JJ., concur.*