Anthony J. ROSSANO, Jr., b/n/f Anthony J. Rossano, Sr., Appellant,

v.

BLUE PLATE FOODS, INC., Appellee.

No. 19606.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1963.

Rehearing Denied April 22, 1963.

6. Confederated Tribes of the Umatilla Indian Reservation v. Maison, 186 F.Supp. 519, 520–521 (D.Or.1960).

Vincent P. McCauley, Columbus, Ga., for appellant.

Albert W. Stubbs, Hatcher, Smith, Stubbs & Rothschild, Columbus, Ga., for Blue Plate Foods, Inc., appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and CARSWELL, District Judge.

CARSWELL, District Judge.

In the course of normal pretrial procedure, the District Court ordered this automobile negligence action to go to the jury on the limited issue of agency, leaving other issues of proximate cause, injury, and damages for later determination. In doing so the Court invoked the provisions of Rule 42(b), Federal Rules of Civil Procedure, which reads:

"(b) Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

Appellant made prompt but unsuccessful objection to this procedure and urges that error was thus committed.

To effect the salutary purposes of this rule it is clear that the trial Court must have broad discretion to determine what will further convenience or avoid prejudice. While conservation of both time and money are the bedrock basis for the rule, it is also true that if trial on a limited issue is prejudicial to the objecting party there has been abuse of discretion which should be reversed.

By every standard of sound administration of justice the District Court here was fully within its authority to settle the agency question first and separately. When the ruling was made, the record presented to the District Court a clear suggestion that the defendant's denial of agency was a very real thing meriting full development of all its pertinent facts before turning to other issues which were all dormantly dependent. For instance, it appeared that the alleged offending automobile was owned by Wayne Harris, not the defendant; that the accident occurred on the public streets, not on the premises of defendant; that Harris made his living by working for the defendant, but that at the time of the accident he was enroute to work after having had breakfast at home. Defendant denied that Harris was within the scope of his employment at the time. There were contentions by the plaintiff to the effect that defendant had ratified the use of Harris' vehicle by Harris for his going to and from his place of work and his home. The District Court properly considered that the law of the State of Georgia on agency in such case was controlling, and certainly we cannot say it abused its discretion in concluding there might reasonably be a very close issue on the question of agency.

The validity of the trial Court's call for limited trial is not dependent, of course, on the actual conclusion of the entire case on that single issue. In limiting the proof to one matter, there is never a requirement that the Court's recognition of serious issues before trial be ultimately resolved after such trial in favor of the party who first suggested the existence of the issue. It is enough that there be on the record at the time a substantial issue of fact which, if determined in favor of defendant, will eliminate expense for all concerned without prejudicing the rights of the parties.

It is difficult to grasp, and we cannot adopt, the argument of appellant that he was prejudiced here in some way. The result of the trial on the merits of his claiming agency was not preordained by the mere fact of trying it alone. As it developed, the issue was decided against him, but what is the harm in ending the fray in one battle instead of two or more? Appellant would have been not one whit

more entitled to a verdict merely because lengthy additional testimony might have been taken on the separate and irrelevant issues of negligence and damages. In this instance it seems to us the Court was well within its discretionary bounds in limiting the action.

Confronted with the necessity of trial on the agency issue alone, appellant then sought to introduce testimony tending to show that the defendant had acted negligently by hiring Harris, who was said to be known as a careless driver, and placing him on the streets with knowledge that Harris might well drive carelessly and injure appellant, or others. This testimony relates to the general proposition of law that it is tortious conduct to employ one to do a particular thing with knowledge that in the scope of that employment the employee might reasonably be expected to act negligently to the detriment of others. Before such inquiry comes into play, however, it is fundamental that there must be a showing of agency. There must be a showing that there was legal accountability by the master for the servant or employee through control within the scope of employment. However predisposed an employee may be to specific acts of negligence, his conduct cannot be charged to his employer if it is done beyond the reach of his employment. Clearly, the District Court was correct in refusing testimony on this point as irrelevant in a trial limited to the issue of agency, which required, and received, a full airing of Harris' scope of employment.

Two final points raised by appellant are necessarily intertwined and will be so treated. They have to do with the District Court's refusal to allow appellant to examine a witness under Rule 43(b),

Federal Rules of Civil Procedure,[1] and the Court's granting motion for directed verdict for Blue Plate at the close of the testimony on the single issue of agency. If the Court restricted the development of Rossano's evidentiary showing by erroneously denying cross-examination or impeachment of a witness, it follows, of course, that error was compounded in that the Court did not have a proper record upon which a directed verdict could be founded.

We conclude that the treatment given Rule 43(b) by the District Court here was not erroneous. The plaintiff Rossano first sought to call Wayne Harris under this Rule on the explicit ground that he was a "managing agent" of Blue Plate as that designation appears in the second sentence of the Rule. There was no contention that the witness was an officer or director of the defendant corporation. Upon objection by defendant, the Court properly ruled that the contention must be proved, and the relevant testimony was taken in the absence of the jury.

Harris was the driver and the owner of the automobile which allegedly injured Rossano on August 15, 1961. Prior to this time he was employed by Blue Plate Foods as a local warehouse manager, charged with the duty of loading trucks for deliveries, keeping certain records, and submitting them to the general office. He was paid a salary of $350.00 a month. His supervisory duties were concerned with four to six delivery men at the warehouse. He used his personal car in going to and from the warehouse and on occasions while enroute and upon the request of his employer he stopped by the Post Office or the bank to make routine mailings, pickups, or deposits. Blue

---

1. Rule 43(b), Federal Rules of Civil Procedure:

"(b) Scope of Examination and Cross-Examination. A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

Plate Foods closed its local warehouse and on September 8, 1961, Harris' job with the company was abolished. He was not re-employed by Blue Plate Foods at any time prior to the date of the trial on March 13, 1962.

Appellee urges that this particular contention of Rossano should be dealt with summarily by holding that the language of Rule 43(b) referring to managing agents means the witness must be so acting at the time he is called to testify and has no reference to his capacity at the time of the incident giving rise to the litigation.

■ In the interpretation and construction of the subject Rule, it must be borne in mind that it seeks to remedy at least some of the more strained results of a rigid application of the traditional premise which impels a party to vouch for the credibility and to be bound by the testimony of every witness who testifies at his instigation.[2] This concept, long ingrained in our tribunals, has much to commend it for orderliness of presentation and evolved with the replacement of an inquisitorial to a contentious or adversary system.

The wide acceptance and often highly artificial result of this common law rule has been much criticized by some courts and by most writers in the field of evidence, particularly as it applies to impeachment by use of previous contradictory statements. See the opinion of Judge Learned Hand in DiCarlo v. United States, 6 F.2d 364, 368 (C.A.2d, 1925) and McCormick on Evidence, 1954 Ed., sec. 38 page 70 ff. From such basic and unsophisticated notions it has for some time been recognized that the truth might not always spill forth from witnesses who are possessed of pertinent information but who also have the interest of one of the opposing parties close to his

heart. Here the techniques of cross-examination or impeachment may well be needed to jog the memory or bring into clear focus the full import of testimony often obtainable from no other source. Recognizing this, Rule 43(b) explicitly provides in its first sentence that a party may interrogate *any* unwilling or hostile witness by leading questions, and to this extent plainly states an exception to the ancient rule. There is no specific provision concerning cross-examination of a witness who is not a party, or an officer, director or managing agent of a party, though there is persuasive precedent that the Court may in its discretion allow a party to cross-examine and impeach his own witness if it appears that the witness is hostile.[3]

■ Before this comes into play, however, a showing must be made that the witness must be considered hostile by reason of clear alignment of interest with the other party or due to antagonism directed to the calling party, either or both to be weighed by the traditional concept of prejudice.

■ In reaching the ultimate conclusion here that the ruling of the District Court denying appellant's motion to call Harris adversely should be sustained, we do so after a thorough review of the record. Appellant did not make it clear to the District Court that he based his claim to call Harris adversely on the general proposition that Harris was, in fact, hostile, and therefore, covered by the first sentence of the Rule. Instead, appellant developed this contention more precisely on the more limited ground that Harris was, in fact, a managing agent of appellee and specifically covered by the language of the second sentence. The trial Court's ruling was, therefore, predicated on the more particular ground that Harris was not, in fact, at the time of the trial, a managing agent of Blue Plate,

2. Howard v. Swagart, et al., 1947, 82 U.S. App.D.C. 147, 161 F.2d 651.
3. Knott Corp. v. Furman, 163 F.2d 199 (CCA 4th, 1947); Di Nicola v. Pennsylvania R. Co., 158 F.2d 856 (CCA 2d, 1946); O'Shea v. Jewel Tea Co., 233 F. 2d 530 (CA 7th, 1956); McCracken v. Richmond, Federicksburg & Potomac R. Co., 240 F.2d 484 (CA 4th, 1957); Larkin v. May Department Stores Company, 250 F.2d 948 (CA 3d, 1958).

and on the ancillary finding that Harris never had been a managing agent under the meaning of the Rule.

We think that the record clearly supports the District Court on both of these determinations, but we also think appellant did make showing sufficient to suggest the application of the general grounds of hostility without exclusively limiting himself to those specific assertions. In short, appellant tried to show that Harris was actually hostile to him and had "given his heart" to Blue Plate and that this condition existed whether he was judicially dubbed a managing agent or merely a former employee. Giving appellant the benefit of doubt and enlarging our review of the record to examine this more general claim to the benefits of the Rule, we find his suggestions of Harris' hostility entirely too thin to support. The mere fact that Harris had been employed by Blue Plate in the past, either as general employee or "managing agent", would not operate, in and of itself, to require a holding that he was so deeply encamped with his former employer that his testimony might not be fully and accurately developed by normal presentation. Certainly evidence of previous amicable or profitable relationships is relevant here, but it is not enough to require a finding of hostility. Aside from this old business association between Harris and Blue Plate, appellant notes only a brief courtroom incident to bolster his point.

Mr. McCauley, counsel for appellant:

"Mr. Wayne Harris. Your Honor, we have just called Mr. Harris to the stand. We would like the record to show that he is now consulting with counsel for the defendant. I don't know what it is about."

The Court:

"Well, I don't either, but the record may show that."

That is all. Nothing more was mentioned about this incident and it is delving into fancy to make this mean Harris was plotting appellant's downfall, or that he thus betrayed such affinity for his former employer as would cloud his memory or color his testimony.

Finally, and perhaps even more thoroughly devastating to appellant's argument on this point is the observation that his interrogation of Harris actually was conducted with leading questions, and with repeated attempts to impeach him in a totally unrestrained manner. Whatever the formal ruling as to his status as a witness, Harris' testimony got a full probing by appellant, as much so as if he had actually been declared hostile in a formal sense under the language of Rule 43(b).

From all this we conclude that there was no prejudice to the appellant requiring reversal. Appellant's failure to base his claim of the witness' general hostility on something more than former employment and the nebulous courtroom incident is both too little and too late.

Appellant's final claim of error attacks the District Court's direction of verdict for Blue Plate at the close of the trial on the limited issue of agency. The trial Court found that there was no conflict in the testimony and that the entire presentation of both appellant and Blue Plate showed that Harris was not within the scope of his employment at the time of the accident. There would be no useful purpose here in expanding the factual showing about Harris' activities. The record is clear and uncontradictory. Harris was returning to work in his own automobile after having gone to his home to eat breakfast. Appellant made persistent and, as noted before, unrestrained effort to elicit testimony from Harris that he was enroute to the bank, or that he was on some other chore in furtherance of his employer's business, but this was flatly denied by Harris. There is nowhere in the record any contradiction of his word in this particular. True, on other and irregular occasions Harris did, in fact, go to the bank to make deposits for Blue Plate, or to the bus station on pick-up or receiving chores, or to the post office. For this sporadic service Harris

was paid by Blue Plate $5 a week as car expense. One witness testified that shortly after the accident she saw Harris putting a sizable bundle of "white papers" in the glove compartment of his car. There is no other identification of these papers. This is certainly far short of competent proof upon which a jury could find, by inference, as appellant urges, that Harris was at the time of the accident doing something, or anything, for Blue Plate in the course of his employment. Viewed in the light most favorable to appellant the full record here does not make out a prima facie showing even that Harris at the time of the accident was doing anything other than proceeding from his home to the company warehouse. Upon a record which is virtually devoid of contradictory testimony in any particular Harris' testimony stands unimpaired on this ultimate fact.

The district court did not have an issue of fact to present to the jury, and that court correctly applied the controlling law as consistently stated by the State of Georgia:

"As a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is enroute to or from his work." Stenger v. Mitchell, 70 Ga.App. 563, at 566; 28 S.E.2d 885, at 887.

In 1960 the Georgia Supreme Court cited this general rule with approval in Chattanooga Publishing Company v. Fulton, 215 Ga. 880, 114 S.E.2d 138. See also Ocean Accident and Guarantee Corp., et al. v. Farr, 180 Ga. 266, 178 S.E. 728; American Mutual Liability Co., et al. v. Curry, 187 Ga. 342, 200 S.E. 150.

Both summary judgment and directed verdict in favor of Blue Plate were, therefore, properly entered by the District Court.

The District Court is

Affirmed.