## 44477. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. DILBECK et al.

WHITMAN, Judge. In this case the trial judge, sitting without a jury, heard evidence presented and made a determination on a declaratory judgment action brought by State Farm.

There was a collision between an automobile and a train. Both of the car's occupants were killed. One was State Farm's insured, John R. Wright, Jr., who was the owner of the vehicle. The other was Rebecca Ann Dilbeck. The husband and daughter of Rebecca Ann Dilbeck brought an action against the executrix of Wright's estate and against the Southern Railway Company seeking damages for her death.

State Farm's action prayed for a declaration by the court that Exclusion (h) of Insuring Agreements I and II of the insurance contract between it and Wright was applicable and that, accordingly, Wright's estate would have no coverage under the policy with respect to the suit against the estate by the Dilbecks; and that State Farm would thus not be required to defend the estate against the suit or be liable for any judgments which the Dilbecks might obtain.

The policy exclusion involved reads as follows: "This insurance does not apply . . . (h) coverage A, (1) to bodily injury to any employee of the insured arising out of and in the course of . . . employment by the insured. . ."

The trial court found that Dilbeck was an employee of Wright, but it also found that State Farm had failed to carry the burden of proof by a preponderance of the evidence that, at the time she was fatally injured, the injury arose out of and in the course of such employment. This finding is appealed from and enumerated as error as being contrary to and unauthorized by the evidence. *Held:*

1. "Where an insurance company seeks to invoke an exclusion contained in its policy, it has the burden of showing that the facts come within the exclusion. *Gaynor v. Travelers Ins. Co.*, 12 Ga. App. 601 (5) (77 SE 1072)." *Darby v. Interstate &c. Ins. Co.*, 107 Ga. App. 409 (130 SE2d 360).

2. The evidence was that both Mr. Wright and Mrs. Dilbeck lived in Woodstock, Georgia. Mr. Wright was involved with two Super Test Oil Company filling stations. One was located in Woodstock which he operated on a "commission basis." The other, which he "managed," was located in Mableton,

Georgia. Mr. Wright employed Mrs. Dilbeck to assist with the bookkeeping at both stations.

There was one house between the Woodstock station and the home of Mrs. Dilbeck. She often worked on the Super Test books at her home. There was testimony that Mrs. Dilbeck "usually" went to Mableton with Mr. Wright. There was other testimony that she did ride with Mr. Wright sometimes, but not "frequently," only when they would be going at the same time, a maximum of one in four trips; that she would usually ride over in her own car. On returning from Mableton Mrs. Dilbeck would sometimes come straight to the Woodstock station and do the bookwork, sometimes she would go home and then later in the day go to the station. There was no certain time scheduled to do the bookwork at the Woodstock station. There was no particular necessity to do bookwork on Wednesdays at Woodstock because the Woodstock banks were closed on that day.

The collision occurred on a Wednesday. Mr. Wright was already in Mableton; he spent Tuesday night at the Mableton station. He left his car in Woodstock with Mrs. Dilbeck. She drove it to Mableton Wednesday morning. They were returning to Woodstock in Wright's car when the collision with the train occurred. One of the employees at the Mableton station said Wright had told him that he was going to Woodstock to work on the "master sheet and count up the money." There was no evidence of what Mrs. Dilbeck intended on her return, other than what might be inferred from the evidence already mentioned regarding her irregular schedule.

3. The case of *Fireman's Fund Indem. Co. v. Buice*, 98 Ga. App. 223 (105 SE2d 373) is controlling here. In that case, at the time of the collision, the vehicle was en route from Atlanta, Georgia, to Valdosta, Georgia, and was being driven by the insured's president, Thomas P. Bentley. An employee of the insured, Buice, was injured. The insured's carrier brought a declaratory judgment action to determine whether the insured was entitled to coverage in view of an exclusion in the policy which provided the insurance did not apply "with respect to injury . . . to any employee . . . of the . . . employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer." Buice was employed by

the insured as a sheet metal superintendent. The insured, Besco Corporation, was doing some work in Valdosta and Buice had been to Valdosta 8 or 10 times in connection with some work which had been underway there for a year and a half, off and on. Sometimes he would drive down a company truck, provided the company was sending materials down for the job in that truck; sometimes he would ride down with other workers employed by the company. On the occasion in question he had been told to go to Valdosta to check out some trouble on an air-conditioning system. Mr. Bentley, the company president, also decided to make the trip and told Buice he could go with him and save Buice from driving his own car or whichever way he was going. Buice took the truck on home, ate supper, went by and picked up Bentley and they proceeded on to Valdosta. It was also established that the truck was loaded with equipment for the Valdosta job; that Buice worked from 8 a.m. to 4:30 p.m., 40 hours a week with payment on an hourly basis; that the company was not particularly interested in how Buice got to Valdosta so long as he was there at the appointed time; and that if the company had a truck going to Valdosta he was allowed, for the sake of convenience, to ride down on that truck.

This court held the insured was not excluded from coverage, stating that: "The court was authorized to find that the insured did not furnish Buice transportation to the job at Valdosta as a part of his employment contract and as an incident thereto, and was further authorized to find that furnishing transportation to Buice had not become a part of the employment contract or an incident to his employment by implication by reason of custom."

The rule, in our view, which is established by the *Buice* case is that where an employee has duties to perform at separate locations, he is not in the course of his employment, i.e., in the performance of his employment duties, in merely traveling between the two locations while riding on occasion in his employer's vehicle unless he is provided with such transportation as a part of his employment contract or such transportation has by implication, by reason of custom, become a part of the employment contract.

So even if it could be assumed, in the present case, that Mrs. Dilbeck was on her way to perform employment duties at the Woodstock station (as was affirmatively established in

Buice's case), rather than on her way home, it still would not require a finding that she was in the performance of employment duties when the collision occurred.

4. There is no difference of substance in the exclusionary clauses of the policies in the *Buice* case and the present case. The exclusionary clause in the present case has been previously set forth. It will be seen to use language similar to that which is found in workmen's compensation cases. And we have been urged to consider such cases. The same result would still obtain. See, e.g., *American Mut. Liab. Ins. Co. v. Curry,* 187 Ga. 342 (200 SE 150).

The trial court did not err in denying the relief sought by declaratory judgment.

*Judgment affirmed. Jordan, P. J., and Hall, J., concur.*

ARGUED JUNE 4, 1969—DECIDED NOVEMBER 12, 1969— REHEARING DENIED DECEMBER 1, 1969—

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr.,* for appellant.

*G. Robert Howard, R. M. Reed, Charles M. Lokey, Lokey & Bowden, Edwards, Bentley, Awtrey & Parker, Scott S. Edwards, Jr., Matthews, Maddox, Walton & Smith, James D. Maddox,* for appellees.

