**NATIONAL RESORTS, v. ALLEN**
No. 82-14229
Eleventh Judicial Circuit, Dade County
August 30, 1983

Talbot W. Trammell, Patricia A. Seitz, Steel Hector & Davis for plaintiffs counter-defendants.

Gary D. Fox, Floyd Pearson Stewart Richman Greer Weil and Zack, for defendants counter-plaintiff.

FREDRICKA G. SMITH, Circuit Judge

## Background

Counter-defendants, NATIONAL RESORTS, INC., WALLACE H. COULTER, and JOSEPH R. COULTER, JR., moved pursuant to Rule 1.510 of the Florida Rules of Civil Procedure for a summary judgment in their favor on the issues raised by the second amended counterclaim and answer thereto filed in Case No. 82-14229 and petitioners, WALLACE H. COULTER and JOSEPH R. COULTER, JR., moved for summary judgment on the issues raised by the petition and response thereto filed in Case No. 79-5169. The counter-defendants moved, in the alternative, for an order striking the counter-plaintiff's claim for punitive damages.

The grounds for summary judgment in favor of counter-defendants on Count I of the counterclaim was that Count I attempted to allege a cause of action to determine the ownership of two shares of National Resorts, Inc. stock and Helen Allen could not be the actual equitable owner of this stock since it had not been issued, no consideration was paid for it, and Stewart D. Allen did not intend to have any ownership rights in it.

The grounds for summary Judgment in favor of Counter-defendants on Count II of the counter-claim, on the conversion count,

(1) The National Resorts stock, which was allegedly converted, could not be the subject of a conversion since it had not been issued, no consideration was paid for it, and Stewart D. Allen did not intend to have any ownership rights in it. Therefore Stewart D. Allen was not the actual equitable owner of the stock as a matter of law.

(2) Since Stewart D. Allen did not part with any money or any other consideration for the National Resorts, Inc. stock, it was not possible for defendants to have been guilty of conversion of the stock.

(3) The counter-plaintiff never demanded of any Counter-defendants that the subject National Resorts, Inc. stock certificate be delivered to the counter-plaintiff or that two shares of NRI stock be issued in the name of Helen Allen and therefore an action for conversion did not lie.

(4) Counter-plaintiff could not sue for conversion because Steward D. Allen, during his lifetime, authorized the counter-defendants to do what was necessary to vest ownership and possession of the stock in Wallace H. Coulter and Joseph R. Coulter, Jr.

(5) Helen Allen, individually, could not sue for conversion because she did not have the right to immediate possession of the stock and never had possession of it.

(6) If counter-plaintiff Helen Allen was the true owner of the stock, the only remedy which would be available to either Counter-plaintiff would be to seek an order requiring NRI to deliver two shares of stock to such true owner who could not sue for damages since NRI is the issuer of the stock and Florida Statute 678.8-404 precludes an action for conversion.

(7) The subject stock never was an asset of the Estate of Stewart D. Allen so it could not be inherited by Helen Allen nor be the subject of her action for conversion.

(8) Helen Allen, both individually and as personal representative of the Estate of Stewart D. Allen, was estopped, as a matter of law, from claiming an ownership interest in the two shares of stock and to claim that the Estate of Stewart D. Allen or Helen Allen, individually, owns this stock in NRI because before the Estate was closed on April 20, 1982, Helen Allen had knowledge of said two shares of stock, discussed the ownership of this stock with her attorneys representing her in both her individual and co-personal representative capacities, having become aware of the stock in late September, 1979, and then filed a Petition for Discharge in March of 1982 which made no reference to the two shares of National Resorts stock and swore, under penalty of perjury, that there were no assets of the Estate that were not listed in the final accounting and that the Estate was fully administered. This document was filed with the Court. At approximately the same time, the Counter-plaintiff, in her individual capacity, signed the Receipt of Beneficiary and Consent to Discharge in which she acknowledged that she had received the full share of the Estate to which she was entitled and requested that an Order of Discharge be entered. Again, there was no reference to, or listing, of the two shares of stock at issue. Finding that the Estate was properly administered, the Probate Court entered in Order of Final Discharge on April 20, 1982. Helen Allen, both individually

and as personal representative, was estopped to claim an ownership interest in the stock having made these confessions or admissions in pleadings in a Court of record that she did not own the stock, thus being fully and completely barred to take an inconsistent position that she did own it.

(9) Neither Wallace Coulter nor Joseph R. Coulter exercised any positive, overt acts of dominion over the subject stock which were inconsistent with the rights of either the true owner, themselves, or those of Helen Allen.

## Motion to Separate
## Issues During Trial

The Counter-defendants also moved for an order pursuant to Rule 1.270(b) Fla. R. Civ. P., that the issue of the stock's beneficial ownership be tried initially and separately to a determination by special interrogatory verdict before the parties presented evidence on Count II of the counter claim which sought compensatory and punitive damages for conversion.

The counter-defendants argued the issue of the stock's beneficial ownership if resolved in favor of the Plaintiffs/Counter-defendants, would dispose of the issues raised in Count II of the Counterclaim since the Defendant/Counter-plaintiff must have title to, or rights in, the stock as well as a present or immediate right of possession in order to maintain an action for conversion and punitive damages. *Meyers v. Ferris,* 109 So. 209, 210 (1926); *Allen v. Universal C.I.T. Credit Corp.,* 133 So.2d 442, 445 (Fla. 1st DCA 1961). Unless and until the Counter-plaintiff proved a beneficial ownership in the stock, evidence allegedly supporting the claim of conversion and evidence of the Plaintiff/Counter-defendants' financial worth was irrelevant and prejudicial to the Counter-defendants. *See Rupert v. Sellers,* 368 N.Y.S 2d 904, 912 (N.Y. Sp.Ct. 1975); *Gierman v. Toman,* 185 A.2d 241, 244 (N.J. Sup.Ct. 1962).

The counter-defendants also argued the interests of judicial economy would be served by reserving evidence concerning Count II of the Counterclaim for conversion and punitive damages until the issue of beneficial ownership was resolved, because a special interrogatory verdict in favor of the Plaintiff/Counter-defendants would obivate the need for further proceedings. *See e.g., Reines Distributors, Inc. v. Admiral Corp.,* 257 F.Supp. 619, 620 (S.D.N.Y. 1965) and cases cited therein; *Rossano v. Blue Plate Foods, Inc.,* 314 F.2d 174, 176 (5th Cir.), *cert. denied,* 375 U.S. 866 (1963); *Beeck v. Aquaslide 'N' Dive Corp.,* 562 F.2d 537, 541-542 (8th Cir. 1977) construing Fed.R.Civ.Proc. 42(b). If in the alternative, the jury resolved the issue of beneficial ownership in

favor of the Defendant/Counter-plaintiff, the trial could proceed uninterrupted and the same jury would hear the evidence in support of the Counterclaim for conversion and punitive damages. *See VanderCar v. Pitts,* 106 So.2d 837, 839 (Fla. 2d DCA 1964) approving the procedure adopted in *O'Donnell v. Watson Bros. Transportation Co.,* 183 F.Supp. 577 (N.D. Ill. 1960).

Order on Plaintiffs'/Counter Defendants'
Motion to Strike and/or for Summary Judgment
on Claim for Punitive Damages

This matter came before the Court on Plaintiffs'/Counter-defendants' Motion to Strike and/or for Summary Judgment on Claim for Punitive Damages on August 24, 1983. After hearing argument of counsel and considering memoranda submitted, the Court orders that:

1. The Motion to Strike or for Summary Judgment on the issue of punitive damages is denied.

2. However, to promote judicial economy and fairness the trial shall be bifurcated so that the issue of punitive damages shall be considered by the jury only if they first return a verdict for Helen Allen on her claim for conversion. If such a verdict is returned, the parties shall be permitted to introduce evidence regarding the net worth of the counter-defendants, the jury shall be instructed on the law regarding punitive damages, and the jury shall return a second verdict on the question of the imposition of punitive damages.

3. The schedule regarding the discovery of information on the net worth of counter-defendants set forth in the Court's prior Order shall be in effect.